UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. *04- 30001 - MAP*

| | |
|---|---|
| MICHAEL J. BARNETT, M.D. | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| EAST CAROLINA NEUROLOGY, INC., | ) |
| Defendant | ) |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, the Defendant East Carolina Neurology, Inc. ("ECN") hereby removes Hampshire County Superior Court Civil Action No. HSCV2003-0246 to this Court, in that the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states. In support of this Notice, ECN states as follows:

## PROCEEDINGS IN THE SUPERIOR COURT

1.      Plaintiff Michael J. Barnett, M.D. ("Dr. Barnett") filed Superior Court Civil Action No. HSCV2003-00246 ("Superior Court Action") against ECN in the Superior Court of Hampshire County, Massachusetts on November 12, 2003. The complaint seeks damages on claims for breach of contract, breach of duty of good faith and fair dealing, fraudulent inducement, and unfair and deceptive trade practices in North Carolina and in Massachusetts. A copy of the Complaint is attached as Exhibit 1.

2.      A copy of the Complaint, a Civil Cover Sheet, Plaintiff's First Request for Admissions, and Plaintiff's First Request for Production of Documents were served on December 17, 2003. Plaintiff also filed in the state court action Motions for Pro Hac Vice Admission of

James K. Dorsett and Susan H. Hargrove. Copies of the cover sheet, discovery, and motion are attached as Exhibit 2.

3.    This Honorable Court is the United States District Court for the judicial district and division embracing the place where the action was commenced.

4.    Upon information and belief, no other parties have been joined and served as Defendants in the action.

## SUBJECT MATTER JURISDICTION

5.    This action is within the jurisdiction of this Court pursuant to 28 U.S.C. § 1332(a)(1) because it is an action between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.    According to the Complaint, Dr. Barnett was a citizen of the Commonwealth of Massachusetts and, upon information and belief, remains a citizen of Massachusetts.

7.    ECN was and is incorporated in North Carolina with a principal place of business in Greenville, North Carolina. Therefore, Defendant is a citizen of North Carolina.

## AMOUNT IN CONTROVERSY

8.    Dr. Barnett seeks damages for breach, after three months, of a two-year contract with ECN. Dr. Barnett also seeks damages for breach of the duty of good faith and fair dealing, fraudulent inducement, and unfair and deceptive trade practices in North Carolina and in Massachusetts. The Civil Action Cover Sheet states that Dr. Barnett expected his compensation under the contract would have exceeded $250,000.

## CONCLUSION

9.    This is a civil action over which the Court has original jurisdiction under 28 U.S.C. § 1332 in that it is a controversy between citizens of different states involving a sum or value

2

exceeding $75,000, exclusive of interest and costs. This action therefore may be removed to this Court from the Superior Court of Hampshire County pursuant to 28 U.S.C. § 1441, and ECN respectfully requests such removal.

10.    In filing this Notice of Removal, ECN does not waive any defenses that may be available to it.

11.    Prompt written notice of the filing of this Notice of Removal will be given to Dr. Barnett, with a copy for the Superior Court, as required by 28 U.S.C. § 1446(d).

12.    Pursuant to 28 U.S.C. § 1446(a) & (b), this Notice of Removal is signed in accordance with Fed. R. Civ. P. 11 and is filed with this Court within 30 days after service upon ECN of the Summons and Complaint in the above-captioned action.

Dated:  January 5, 2004

Respectfully submitted,
EAST CAROLINA NEUROLOGY, INC.
By Its Attorneys,

_____
Francis D. Dibble, Jr.
 BBO # 123220
Vanessa L. Smith
 BBO # 649258
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, MA  01115
Tel:  (413) 272-6283
Fax:  (413) 272-6804

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of January, 2004, I caused a true and correct copy of the foregoing **Notice of Removal** to be served by United States mail, first class postage prepaid, upon: Harry L. Miles, Esq., 77 Pleasant Street, P.O. Box 210, Northampton, MA 01061 and James K. Dorsett, III, Esq., Susan H. Hargrove, Esq., P.O. Box 2611, Raleigh, NC 27602-2611.

_____
Vanessa L. Smith, Attorney for Defendant

258419

3

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT OF
THE TRIAL COURT OF THE COMMONWEALTH

Hampshire Division
Civil Action No. 03-____

- - - - - - - - - - - - - - - - - - - - - - -

MICHAEL J. BARNETT, M.D., Plaintiff,

v.

EAST CAROLINA NEUROLOGY, INC., Defendant.

==========================================

COMPLAINT AND DEMAND FOR JURY TRIAL

===================================

Michael J. Barnett, M.D. ("Dr. Barnett" or "Plaintiff"),
complaining of the acts of Defendant, East Carolina Neurology,
Inc., alleges and says the following:

PARTIES.

1.    Plaintiff is, and at all times relevant to this action
has been, a citizen and resident of Hampshire County,
Massachusetts.

2.    East Carolina Neurology, Inc. ("ECN" or "Defendant")
is a professional corporation organized and existing in
accordance with the laws of the State of North Carolina.

JURISDICTION AND VENUE.

3.    ECN transacts business in the Commonwealth of
Massachusetts, regularly does or solicits business, engages in a

persistent course of conduct and derives substantial revenue
from services rendered in this Commonwealth.

    4.    This Court has jurisdiction over the Defendant under
G.L. c. 223A, §3.

    5.    The Plaintiff resides and does business in Hampshire
County, Massachusetts.

            STATEMENT OF FACTS COMMON TO ALL COUNTS.

    6.    Dr. Barnett is a physician licensed to practice
medicine in the Commonwealth of Massachusetts and the State of
North Carolina, among others.  Dr. Barnett has been a board
certified radiologist since 1987 and has completed a fellowship
in magnetic resonance imaging.

    7.    In 2002 Defendant, acting by and through its
authorized principals and employees, recruited Dr. Barnett in
the Commonwealth of Massachusetts to practice radiology with
Defendant in the State of North Carolina.

    8.    Upon information and belief, several members of ECN
were opposed to hiring a radiologist at the time that Dr.
Barnett was hired, preferring to limit costs and to obtain
radiology services from a contract radiologist who was working
two days per week for ECN, an ECN neurologist who had some
training in magnetic resonance imaging but was not a
radiologist, and/or from hiring another neurologist who had the
capacity to read magnetic resonance images.

#BarnettComplaint(3)v2

                            2

9.    At the time that Dr. Barnett was considering accepting
an offer to practice with Defendant, he was simultaneously
considering an offer from another practice located in Colorado.

10.    Due to Dr. Barnett's concerns about Defendant's
possible lack of commitment to maintaining a relationship with
him for a period sufficient to justify his turning down other
offers, Dr. Barnett insisted that Defendant commit in writing to
a two year contract term which could be terminated unilaterally
by ECN only for specific, clearly definable misconduct,
including withdrawal or suspension of his license to practice
medicine or surgery in North Carolina, withdrawal or suspension
of his license to dispense or prescribe narcotic drugs, being
held guilty of professional misconduct by a professional
organization having jurisdiction over him, inability to acquire
professional liability insurance, or excessive use of alcohol or
addictive drugs. A copy of that contract is attached hereto,
incorporated herein by reference, and marked as Exhibit "A."

11.    In order to induce Dr. Barnett to enter an agreement
to practice radiology with Defendant to fill an immediate need
of the practice, Defendant agreed to the contract term and
limits on discharge criteria required by Dr. Barnett.

12.    Upon information and belief, when Defendant agreed to
the contract term and limitations on discharge criteria required
by Dr. Barnett, Defendant did not intend to continue to employ

#BarnettComplaint(3)v2

3

Dr. Barnett for the term period, regardless of whether the contractual criteria for discharge existed.

13.   Dr. Barnett relied on Defendant's agreement to the contract term and limitations on discharge to his deception and detriment, foregoing other opportunities in order to enter into a contract with Defendant.

14.   On or about September 20, 2002, Dr. Barnett entered into an agreement with Defendant (the "Contract") pursuant to which he would practice radiology with the Defendant on a minimum of two consecutive regular and consistent workdays per week to be set by mutual agreement.  (Exh. A, ¶ 15).

15.   The Contract was for a definite duration of two years. (Contract, ¶ 11).

16.   The Contract provided that Dr. Barnett would be compensated in accordance with a specific fee schedule for each MRI/MRA, CT, X-Ray and Ultrasound read by Dr. Barnett. (Contract, ¶ 8).

17.   The Contract mandated that Dr. Barnett could only be discharged by Defendant upon a two-thirds vote of Defendant's Board of Directors due to the occurrence of one of the following:

      a)   the withdrawal or suspension of his license to practice medicine or surgery in North Carolina;

      b)   the withdrawal or suspension of his license to dispense or prescribe narcotic drugs;

c) his being held guilty of professional misconduct by any professional organization having jurisdiction;

d) his inability to acquire medical liability insurance; or

e) his excessive use of alcohol or any addictive drug or other substance.

(Contract, ¶ 2).

18. The duration of the Contract, the compensation specified in the Contract and the limitations on the grounds for unilateral termination of the Contract by Defendant were material to Dr. Barnett's decision to enter into the Contract and to forego other opportunities available to him at the time he entered into the Contract with Defendant.

19. Dr. Barnett began working for Defendant pursuant to the contract on or about January 1, 2003.

20. Approximately one week after Dr. Barnett began working for the Defendant, he became aware that the defendant was actively recruiting an additional neurologist who could read magnetic resonance images.

21. For the period from January 1, 2003 through March 21, 2003, Dr. Barnett performed valuable services for ENC and its patients. During that time period, Dr. Barnett received average compensation of $6155.00 per two-day work week.

22. Dr. Barnett performed all of his obligations pursuant to the Contract.

#BarnettComplaint(3)v2

23. On or about March 21, 2003, the Defendant terminated the contract and discharged Dr. Barnett.

24. Defendant's termination of Dr. Barnett was not in accordance with the Contract nor was it for any of the five grounds specified in the termination provision of the Contract.

25. At the time of Dr. Barnett's termination, Defendant did not allege that Dr. Barnett's termination was based upon any of the five grounds for termination specified in the termination provision of the Contract.

26. Defendant's termination of Dr. Barnett was wrongful and constituted a breach of the Contract.

27. Although Defendant promoted dissatisfaction with Dr. Barnett's services as a pretext for its termination of the contract, Dr. Barnett alleges, on information and belief, that his discharge was due to Defendant's dissatisfaction with the economic consequences of its decision to enter into the Contract with Dr. Barnett, and its interest in obtaining the services provided by Dr. Barnett more cheaply from another source.

28. Since his discharge by Defendant, Dr. Barnett has engaged in reasonable efforts to mitigate his damages by obtaining an engagement comparable to his contractual relationship with Defendant.

#BarnettComplaint(3)v2

## FIRST CLAIM FOR RELIEF
### Breach of Contract

29.    Plaintiff realleges paragraphs 1 through 28 and incorporates them by reference as though fully set forth.

30.    Defendant's discharge of Plaintiff was a breach of the Contract.

31.    Plaintiff did not engage in any conduct that would justify his discharge pursuant to the Contract.

32.    The breach of the Contract has caused Plaintiff to suffer substantial damages in excess of Twenty-five thousand ($25,000) dollars, including lost income, and Plaintiff is entitled damages sufficient to put him in the same position that he would have been in had Defendant not breached the Contract.

## SECOND CLAIM FOR RELIEF
### Breach of Duty of Good Faith and Fair Dealing

33.    Plaintiff realleges paragraphs 1 through 29 and incorporates them by reference as though fully set forth.

34.    Under the laws of the Commonwealth of Massachusetts and the State of North Carolina, every contract includes an implied duty to perform the subject matter of the contract fairly and in good faith.  Defendant's precipitous and unjustified discharge of Plaintiff, in violation of the plain language of the Contract, constitutes a breach of the implied obligation of good faith and fair dealing pursuant to the Contract.

#BarnettComplaint(3)v2

7

35.    Defendant's breach of its duty of good faith and fair dealing has proximately and directly caused and will continue to cause significant harm to Plaintiff, including damages in excess of twenty-five thousand ($25,000) dollars.

### THIRD CLAIM FOR RELIEF
### Fraudulent Inducement

36.    Plaintiff realleges paragraphs 1 through 35 and incorporates them by reference as though fully set forth.

37.    The representations of Defendant's agents to Plaintiff concerning Defendant's commitment to retain Plaintiff's services for a period of two years, with Plaintiff to be dischargeable only upon the occurrence of an event described in paragraph 2 of the Contract, were false and Defendant's agents knew the representations were false at the time they were made or acted in reckless disregard for their truth or falsity.

38.    Defendant's agent's false representations were made with intent to deceive Plaintiff and to induce Plaintiff to enter into the Contract and provide radiology services for Defendant and they did in fact deceive Plaintiff and in reliance on them Plaintiff declined other opportunities and entered into the Contract.

39.    As a direct and proximate result of Defendant's fraudulent inducement, Plaintiff has been damaged in an amount in excess of twenty-five thousand ($25,000) dollars.

#BarnettComplaint(3)v2

8

FOURTH CAUSE OF ACTION
Unfair and Deceptive Trade Practices-North Carolina Law

40.  Plaintiff realleges the allegations of paragraphs 1 - 39 and incorporates them by reference as though fully set forth.

41.  Defendant's actions and false representations were in or affecting commerce and constitute unfair or deceptive trade practices in violation of North Carolina General Statutes  § 75-1.1.

42.  Defendant's unfair and deceptive trade practices have damaged Plaintiff in an amount in excess of twenty-five thousand ($25,000) and Plaintiff is entitled to have his damages trebled and to recover attorneys' fees incurred in this action.

FIFTH CAUSE OF ACTION.
Unfair and Deceptive Trade Practices – Massachusetts Law

43.  Plaintiff realleges the allegations of paragraphs 1 - 41 and incorporates them by reference as though fully set forth.

44.  Defendant has committed unfair and deceptive acts and practices in violation of G.L. c. 93A, §11.

45.  The Defendant committed unfair and deceptive acts and practices in violation of G.L. c. 93A, §11, knowingly, intentionally, and in bad faith.

45.  By reason of the Defendant's unfair and deceptive acts and practices, the Plaintiff has lost money and property of a value that exceeds twenty-five thousand ($25,000) dollars.

#BarnettComplaint(3)v2

9

WHEREFORE, Plaintiff respectfully prays the Court for relief against the Defendant as follows:

1.    That Plaintiff have and recover compensatory damages from Defendant in an  amount to be established at trial, together with interest thereon as permitted by law;

2.    That Plaintiff have and recover treble damages and attorneys' fees against Defendant for its unfair trade practices under Plaintiff's Fourth Cause of Action, or, in the alternative, that Plaintiff have and recover exemplary damages of not more than three, nor less than two, times his actual damages under Plaintiff's Fifth Cause of Action;

3.    That Plaintiff be awarded its costs and expenses incurred in connection with this action, including attorneys' fees and expert fees as provided by law;

4.    That Plaintiff be awarded punitive damages and interest thereon as permitted by law under Plaintiff's Third Cause of Action;

5.    For such other and further relief as the Court may deem just and proper.

### Demand for Jury Trial

The Plaintiff claims trial by jury of all issues so triable.

Dated at Northampton, November 1𝒱, 2003.

#BarnettComplaint(3)v2

10

Respectfully submitted,
The Plaintiff by his attorneys:
*Green, Miles, Lipton & Fitz-Gibbon*


By_____
        Harry L. Miles
        77 Pleasant Street, P.O. Box 210
        Northampton, Massachusetts 01061
        Telephone 413.584.6278
        Facsimile 413.584.6278
        BBO#: 345800


                - and -


*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P.*



By _____
        James K. Dorsett, III, N.C. State Bar No. 7695
        Susan H. Hargrove, N.C. State Bar No. 18771
        Post Office Box 2611
        Raleigh, North Carolina 27602-2611
        Telephone: (919) 821-1220
        Facsimile: (919) 821-6800

(Motion for *Pro Hac Vice Admission* Pending)

#BarnettComplaint(3)v2

11

EXHIBIT A

NORTH CAROLINA

PITT COUNTY

<u>CONTRACT AGREEMENT</u>

THIS CONTRACTUAL AGREEMENT, made this 20th day of September, 2002, by and between EAST CAROLINA NEUROLOGY, INC., a professional corporation organized under the laws of the State of North Carolina, hereinafter referred to as "Contractor", and Michael Barnett, M.D., a physician duly licensed to practice medicine in the aforesaid State, hereinafter referred to as "Contractee";

W I T N E S S E T H :

THAT WHEREAS, Contractor, having been organized for the purpose of providing the general public with the services of physicians, and more particularly of physicians skilled in the specialty of neurology desires to employ Contractee to assist in his professional capacity in the fulfillment of the aforesaid purpose;

AND WHEREAS, Contractee, understanding and accepting the conditions of the contract set forth herein, desires to be under contract by Contractor to assist in his professional capacity as aforesaid.

NOTE, THEREFORE, in consideration of the promises and of the mutual covenants herein contained, and of other good and valuable considerations, the parties do hereby covenant and agree together as follows:

1.   Commencing on or about the 1st day of January, 2003, Contractor will contract Contractee on the understanding that Contractee will devote his utmost knowledge and best skill to the care of such patients as shall be entrusted to him under general rules from time to time promulgated by Contractor through its Board of Directors.

2.   Contractee hereby pledges his active and industrious practice of his profession in Contractor's interest and his faithful adherence to the Principles of Medical Ethics of the American Medical Association. Contractee hereby specifically agrees and covenants that the occurrence of any one of the following events shall entitle Contractor, by a two-thirds (2/3"s) vote of

its Board of Directors (Contractee, if a member of the Board, not voting), to discharge him from the contract with or without notice:

      (a)   the withdrawal or suspension of his license to practice medicine and surgery in North Carolina;

      (b)   the withdrawal or suspension of his license to dispense or prescribe narcotic drugs;

      (c)   his being held guilty of professional misconduct by any professional organization having jurisdiction;

      (d)   his inability to acquire medical liability insurance; or

      (e)  his excessive use of alcohol or any addictive drug or other substance.

      3.   Contractor undertakes that in specific areas of diagnosis and treatment, Contractee's professional responsibility shall be unchallenged, and Contractor will not, through its Board of Directors or any of its officers or Contractees, direct, supervise or control Contractee in his professional care of any individual patient. This includes, but is not limited to, Contractee's control over MRI protocols on his patients. Provided always that this Section shall not prevent Contractor from

      (a)   promulgating general rules governing the rendering of medical services to patients, and

      (b)   relieving Contractee of the care of an individual patient when, in the opinion of Contractor's Board of Directors, Contractee is not observing such general rules or performing up to the standards required by Contractor.

      4.   Contractor hereby specifically undertakes to make available to Contractee the advice and assistance of all or any of its other physician-Contractees in the diagnosis and treatment of any case. Contractor shall furnish Contractee with an office, stenographic services, supplies and equipment, and such other facilities and services as are suitable to the position of the Contractee and necessary for the performance of his duties hereunder.

      5.   Contractee hereby specifically undertakes to advise and assist on request any other physician-Contractee of Contractor in the diagnosis and treatment of any case. Contractee shall have

the right to make use of such of his own property as he may desire and such property shall be and remain that of the Contractee.

      6. . Contractor agrees that in emergency situations Contractee may, in his sole discretion, seek advice and assistance from physicians not employed by Contractor. Contractee agrees that he desires the advice or assistance of an outside physician in a non-emergency situation, he will follow such procedure as may be prescribed by Contractor for obtaining the same.

      7. Contractee hereby expressly agrees and covenants that the compensation and benefits received by him under this Agreement shall satisfy and discharge in full all his claims upon Contractor for compensation in respect of his professional services. Contractee acknowledges that his service in the employment in no way confers upon him any ownership interest in or personal claim upon any fees charged by Contractor for his services, whether the same are collected during the contract or after the termination thereof, and he hereby disclaims and renounces any such interest or claim.

      8. Contractee's compensation shall be fixed by Contractor's Board of Directors, and shall consist of payment for each MRI/MRA, CT, X-ray and Ultrasound the Contractee reads and interprets with a completed report. Payment will be made to the Contractee the 5th of the month for the previous months readings/interpretations. Fees are established as follows:

| | |
|---|---|
| MRI or MRA | $120.00 per scan first year |
| | $125.00 per scan thereafter |
| CT | $ 90.00 per scan |
| X-ray | $ 7.00 set |
| Ultrasound | $ 60.00 procedure |

      9. Contractor and Contractee agree that the Professional Corporation Act, Chapter 55B of the General Statues of North Carolina, the Regulations of the Board of Medical Examiners of the State of North Carolina promulgated pursuant thereto, Contractor's Articles of Incorporation and By-Laws, together with all currently effective supplements, modifications, and regulations made thereunder, are hereby expressly referred to and specifically incorporated into this Agreement by reference and made a part hereof.

10.   Contractee agrees that all new general rules and regulations, and all resolutions of Contractor's Board of Directors governing the employment of physicians generally, shall modify this Agreement as if they had been included in it and had been made part of it, provided always that no new rule, regulation or resolution affecting Contractee only shall modify this Agreement unless his consent be endorsed thereon.

11.   The term of this contract shall be for two (2) years, with option for one additional year.

12.   This Contract may be terminated by mutual agreement of both the Contractor and the Contractee; the Contract will terminated sixty (60) days after the date of such an agreement.

13.   The Contractor shall take out and keep in force malpractice and professional liability insurance for the Contractee in an amount at least as great as One Million Dollars ($1,000,000.00/$3,000,000.00) to cover liabilities resulting to the Contractor and to the Contractee individually from the practice of medicine.

14.   Any notice required hereunder shall be deemed sufficient and service thereof completed upon receipt, refusal or non-delivery of same if the same be in writing and hand delivered or addressed to the addressee at the last known post office address thereof in case of the Contractee or the registered office in the case of the Contractor, and mailed certified or registered mail, with return receipt requested, postage prepaid.

15.   For the term of this Contract, Contractor guarantees Contractee a minimum of two consecutive regular and consistent weekdays of work per week, the two (2) days set by prior mutual agreement. Contractee will be given the opportunity to read all MRI cases performed on those days.   Any additional days beyond these two (2) days per week must be by mutual agreement of both parties.

16.   Contractee can take up to six (6) weeks (twelve work days) unpaid vacation at his discretion, upon giving Contractor prior notice.   Additional vacation (excluding medical or family emergencies) must be by mutual agreement.

17.   Contractor will pay for all of Contractee's and Contractee's families' relocation expenses up to a maximum of $8000.00.

18.    Contractor will pay for Contractee's North Carolina licensure fees.

19.    Contractor agrees to add Contractee to their group medical insurance policy, offering Contractee the same coverage as partners with Contractee reimbursing the Contractor for the cost of the premiums.

20.    This Agreement shall be subject to and governed by the laws of North Carolina irrespective of the fact that Contractee may be or may become a resident of another State.

21.    The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions hereof, and this Agreement shall be construed in all respects as if such invalid or unenforceable provisions were not contained herein.

22.    This Agreement shall be binding upon and inure to the benefit of the Contractor and the Contractee and their respective heirs, legal representatives, executors, administrators, successors and assigns.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals, the day and year first above written, all in duplicate originals.

EAST CAROLINA NEUROLOY, INC.

By: _____
        Donald L. Price, Jr., M.D.
              President

(CORPORATE SEAL)

ATTEST:

_____
     Daniel O. Lee, M.D.
         Secretary

_____ (SEAL)
     Michael Barnett, M.D.