VLS

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) | Trial Court of Massachusetts Superior Court Department County: Hampshire |
|---|---|---|

| NTIFF(S) chael Barnett | DEFENDANT(S) East Carolina Neurology, Inc. |
|---|---|

| ORNEY, FIRM NAME, ADDRESS AND TELEPHONE rry L. Miles, Green, Miles, Lipton & Fitz- bbon, Northampton, MA  (413) 586-8218 rd of Bar Overseers number:  345800 | ATTORNEY  (if known) |
|---|---|

### Origin code and track designation

ice an x in one box only:

1. F01 Original Complaint
2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

☐ 4. F04 District Court Appeal c.231, s. 97 &104 (Afte· trial) (X)
☐ 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
☐ 6. E10 Summary Process Appeal (X)

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

ODE NO.        TYPE OF ACTION (specify)     TRACK        IS THIS A JURY CASE?

__A99__       __Breach of Contract__    ( F )    ( x )Yes    ( ) No

ie following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine oney damages.  For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS

(Attach additional sheets as necessary)

Documented medical expenses to date:

1.   Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
2.   Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
3.   Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
4.   Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
5.   Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
                                                                                              Subtotal $. . . . . . . . . . . .

Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
Reasonably anticipated future medical and hospital expenses . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
Other documented items of damages (describe)

                                                                                                $. . . . . . . . . . . .

Brief description of plaintiff's injury, including nature and extent of injury (describe)

                                                                                                $. . . . . . . . . . . .
                                                                             TOTAL $. . . . . . . . . . . .

### CONTRACT CLAIMS

(Attach additional sheets as necessary)

ovide a detailed description of claim(s):

laintiff and Defendant entered into a contract for services with a term of two years.  Plain- iff performed under the contract, but the Defendant terminated the contract.  Plaintiff expects is compensation under the contract would have exceeded $250,000.00.

                                                                             TOTAL $. . . . . . . . . . . .

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT OF
THE TRIAL COURT OF THE COMMONWEALTH

Hampshire Division
Civil Action No. 03-___

------------------------

MICHAEL J. BARNETT, M.D., Plaintiff,

v.

EAST CAROLINA NEUROLOGY, INC., Defendant.

==========================================

PLAINTIFF'S FIRST REQUEST FOR
ADMISSIONS PURSUANT TO MASS. R. CIV. P., 36

==============================================

Pursuant to Mass. R. Civ. P., 36, the Plaintiff requests the Defendant East Carolina Neurology, Inc. (ECN) within thirty (30) days after service of this request to make the following admissions for the purpose of this action only and subject to all pertinent objections to admissibility which may be interposed at trial:

1.    That the following document, the "Contract Agreement" by and between ECN and the Plaintiff Michael Barnett, M.D., dated September 20, 2002 (the contract), a copy of which is attached hereto, incorporated herein by reference, and marked as Exhibit A, is genuine.

2.    That each of the following statements is true:

A.    Donald L. Price, Jr., M.D., was authorized to enter into the contract on behalf of ECN.

B.    Daniel O. Lee, M.D., was authorized to Attest the contract on behalf of ECN.

C.    The State of North Carolina has not suspended or withdrawn the license of Michael Barnett, M.D., to practice medicine and surgery in North Carolina.

D.    The license of Michael Barnett, M.D., to dispense or to prescribe narcotic drugs has not been suspended or withdrawn.

E.    No professional organization having jurisdiction has held Michael Barnett, M.D., guilty of professional misconduct.

F.    Michael Barnett, M.D., has maintained the ability to acquire medical liability insurance from and before the inception of the contract to the present day.

G.    Michael Barnett, M.D., has not engaged in the excessive use of alcohol or any addictive drug or other substance from the inception of the contract to the present day.

H.    Michael Barnett, M.D., has not breached or failed to perform any of the terms and conditions of the contract.

Dated at Northampton, November 10, 2003.

Respectfully submitted,
The Plaintiff by his attorneys:
*Green, Miles, Lipton & Fitz-Gibbon*

By _____
        Harry L. Miles
        77 Pleasant Street, P.O. Box 210
        Northampton, Massachusetts 01061
        Telephone 413.584.6278
        Facsimile 413.584.6278
        BBO#: 345800


                - and –


*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P.*


By _____
        James K. Dorsett, III, N.C. State Bar No. 7695
        Susan H. Hargrove, N.C. State Bar No. 18771
        Post Office Box 2611
        Raleigh, North Carolina 27602-2611
        Telephone: (919) 821-1220
        Facsimile: (919) 821-6800

(Motion for *Pro Hac Vice Admission* Pending)

Certificate of Service:  I, Harry L. Miles, attorney for the
plaintiff, certify that I have served a copy of this pleading
upon the Defendant by causing it to be served with the summons
and complaint in this matter.

Harry L. Miles

NORTH CAROLINA

<u>CONTRACT AGREEMENT</u>

PITT COUNTY

THIS CONTRACTUAL AGREEMENT, made this 20th day of September, 2002, by and between EAST CAROLINA NEUROLOGY, INC., a professional corporation organized under the laws of the State of North Carolina, hereinafter referred to as "Contractor", and Michael Barnett, M.D., a physician duly licensed to practice medicine in the aforesaid State, hereinafter referred to as "Contractee";

W I T N E S S E T H:

THAT WHEREAS, Contractor, having been organized for the purpose of providing the general public with the services of physicians, and more particularly of physicians skilled in the specialty of neurology desires to employ Contractee to assist in his professional capacity in the fulfillment of the aforesaid purpose;

AND WHEREAS, Contractee, understanding and accepting the conditions of the contract set forth herein, desires to be under contract by Contractor to assist in his professional capacity as aforesaid.

NOTE, THEREFORE, in consideration of the promises and of the mutual covenants herein contained, and of other good and valuable considerations, the parties do hereby covenant and agree together as follows:

1.    Commencing on or about the 1st day of January, 2003, Contractor will contract Contractee on the understanding that Contractee will devote his utmost knowledge and best skill to the care of such patients as shall be entrusted to him under general rules from time to time promulgated by Contractor through its Board of Directors.

2.    Contractee hereby pledges his active and industrious practice of his profession in Contractor's interest and his faithful adherence to the Principles of Medical Ethics of the American Medical Association. Contractee hereby specifically agrees and covenants that the occurrence of any one of the following events shall entitle Contractor, by a two-thirds (2/3"s) vote of

its Board of Directors (Contractee, if a member of the Board, not voting), to discharge him from the contract with or without notice:

(a)    the withdrawal or suspension of his license to practice medicine and surgery in North Carolina;

(b)    the withdrawal or suspension of his license to dispense or prescribe narcotic drugs;

(c)    his being held guilty of professional misconduct by any professional organization having jurisdiction;

(d)    his inability to acquire medical liability insurance; or

(e)    his excessive use of alcohol or any addictive drug or other substance.

3.    Contractor undertakes that in specific areas of diagnosis and treatment, Contractee's professional responsibility shall be unchallenged, and Contractor will not, through its Board of Directors or any of its officers or Contractees, direct, supervise or control Contractee in his professional care of any individual patient. This includes, but is not limited to, Contractee's control over MRI protocols on his patients. Provided always that this Section shall not prevent Contractor from

(a)    promulgating general rules governing the rendering of medical services to patients, and

(b)    relieving Contractee of the care of an individual patient when, in the opinion of Contractor's Board of Directors, Contractee is not observing such general rules or performing up to the standards required by Contractor.

4.    Contractor hereby specifically undertakes to make available to Contractee the advice and assistance of all or any of its other physician-Contractees in the diagnosis and treatment of any case.    Contractor shall furnish Contractee with an office, stenographic services, supplies and equipment, and such other facilities and services as are suitable to the position of the Contractee and necessary for the performance of his duties hereunder.

5.    Contractee hereby specifically undertakes to advise and assist on request any other physician-Contractee of Contractor in the diagnosis and treatment of any case.    Contractee shall have

10. Contractee agrees that all new general rules and regulations, and all resolutions of Contractor's Board of Directors governing the employment of physicians generally, shall modify this Agreement as if they had been included in it and had been made part of it, provided always that no new rule, regulation or resolution affecting Contractee only shall modify this Agreement unless his consent be endorsed thereon.

11. The term of this contract shall be for two (2) years, with option for one additional year.

12. This Contract may be terminated by mutual agreement of both the Contractor and the Contractee; the Contract will terminated sixty (60) days after the date of such an agreement.

13. The Contractor shall take out and keep in force malpractice and professional liability insurance for the Contractee in an amount at least as great as One Million Dollars ($1,000,000.00/$3,000,000.00) to cover liabilities resulting to the Contractor and to the Contractee individually from the practice of medicine.

14. Any notice required hereunder shall be deemed sufficient and service thereof completed upon receipt, refusal or non-delivery of same if the same be in writing and hand delivered or addressed to the addressee at the last known post office address thereof in case of the Contractee or the registered office in the case of the Contractor, and mailed certified or registered mail, with return receipt requested, postage prepaid.

15. For the term of this Contract, Contractor guarantees Contractee a minimum of two consecutive regular and consistent weekdays of work per week, the two (2) days set by prior mutual agreement. Contractee will be given the opportunity to read all MRI cases performed on those days. Any additional days beyond these two (2) days per week must be by mutual agreement of both parties.

16. Contractee can take up to six (6) weeks (twelve work days) unpaid vacation at his discretion, upon giving Contractor prior notice. Additional vacation (excluding medical or family emergencies) must be by mutual agreement.

17. Contractor will pay for all of Contractee's and Contractee's families' relocation expenses up to a maximum of $8000.00.

18. Contractor will pay for Contractee's North Carolina licensure fees.

19. Contractor agrees to add Contractee to their group medical insurance policy, offering Contractee the same coverage as partners with Contractee reimbursing the Contractor for the cost of the premiums.

20. This Agreement shall be subject to and governed by the laws of North Carolina irrespective of the fact that Contractee may be or may become a resident of another State.

21. The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions hereof, and this Agreement shall be construed in all respects as if such invalid or unenforceable provisions were not contained herein.

22. This Agreement shall be binding upon and inure to the benefit of the Contractor and the Contractee and their respective heirs, legal representatives, executors, administrators, successors and assigns.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals, the day and year first above written, all in duplicate originals.

EAST CAROLINA NEUROLOY, INC.

By: _____
        Donald L. Price, Jr., M.D.
                President

(CORPORATE SEAL)

ATTEST:

_____
        Daniel O. Lee, M.D.
            Secretary

_____ (SEAL)
        Michael Barnett, M.D.

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT OF
THE TRIAL COURT OF THE COMMONWEALTH

Hampshire Division
Civil Action No. 03-____

- - - - - - - - - - - - - - - - - - - - - - -

MICHAEL J. BARNETT, M.D., Plaintiff,

v.

EAST CAROLINA NEUROLOGY, INC., Defendant.

==========================================

PLAINTIFF'S FIRST REQUEST FOR
PRODUCTION OF DOCUMENTS

====================================

Pursuant to Mass. R. Civ. P., 34, the Plaintiff requests the Defendant East Carolina Neurology, Inc. (ECN) to produce the following documents and things for inspection and copying:

If ECN objects to any request or decline to respond to any request because it requires the disclosure of privileged information, work product or trade secrets, please specify the particular privilege which it invokes.

Please conform to the following definitions in ECN's responses:

1.   *Communication.* The terms "communication" or "communicate" mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.    *Document*. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Mass. R. Civ. P., 34(a). A draft or non-identical copy is a separate document within the meaning of this term. The term "document" expressly includes electronic communications in the form of email or file transfer regardless of the location of the server on which the electronic form of the document resides. The term "document" expressly excludes confidential, attorney-client communications.

3.    *Concerning*. The term "concerning" means referring to, describing, evidencing, or constituting.

4.    *Defendant*. The term "defendant" means ECN, its shareholders, officers, agents and employees.

5.    *Imaging Services*. The term "imaging services" means the supervision of obtaining and the interpretation of results of patient images obtained through CT scan, magnetic resonance, x-ray or ultrasound imaging or otherwise, for the purpose of evaluation and diagnosis.

6.    *Contract*. The term "Contract" means the contract between Plaintiff and Defendant attached to the Complaint as exhibit A).

Requests.

1.    All correspondence between Defendant, including that of any employee, member, shareholder or agent of Defendant, and Plaintiff.

#barnettRPDv1

2

2.    All documents which the Defendant created, modified, or received from January 1, 1998, to the present that concern or refer to Defendant's search for, or interest in employing, a physician employee to provide Imaging Services on behalf of Defendant.

3.    All contracts between Defendant and any physician hired or engaged by Defendant as an employee or independent contractor to provide Imaging Services from January 1, 1999 to the present.

4.    The by-laws of Defendant, including all modifications and amendments thereto from January 1, 1999 to the present.

5.    All minutes of all meetings of the Board of Directors of Defendant from January 1, 2002 to the present.

6.    All documents reflecting, referring or relating to Defendant's decision to discharge Plaintiff from the Contract.

7.    All general rules and regulations, and all resolutions of ECN's Board of Directors that Defendant contends to be modifications the Contract pursuant to paragraph 10 of the Contract.

8.    All checks, pay stubs, W-2s, and/or 10-99's reflecting, referring or relating to payments made by Defendant to Plaintiff.

#barnettRPDv1

3

9.   All documents Defendant contends reflect or relate to Plaintiff's obligation to mitigate damages suffered as a consequence of Defendant's breach of the Contract.

10.   All documents which the Defendant generated within the past five years concerning the solicitation of any physician to become an employee of the Defendant.

Respectfully submitted,
The Plaintiff, by his attorneys:
*Green, Miles, Lipton & Fitz-Gibbon*

By _____
        Harry L. Miles
        77 Pleasant Street, P.O. Box 210
        Northampton, Massachusetts 01061
        Telephone 413.584.6278
        Facsimile 413.584.6278
        BBO#: 345800

                - and -

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P.*

By _____
        James K. Dorsett, III, N.C. State Bar No. 7695
        Susan H. Hargrove, N.C. State Bar No. 18771
        Post Office Box 2611
        Raleigh, North Carolina 27602-2611
        Telephone: (919) 821-1220
        Facsimile: (919) 821-6800

(Motion for *Pro Hac Vice Admission* Pending)

Certificate of Service: I, Harry L. Miles, attorney for the plaintiff, certify that I have served a copy of this pleading upon the Defendant by causing it to be served with the summons and complaint in this matter.

Harry L. Miles

#barnettRPDv1

4

NORTH CAROLINA

<u>CONTRACT AGREEMENT</u>

PITT COUNTY

THIS CONTRACTUAL AGREEMENT, made this 20th day of September, 2002, by and between EAST CAROLINA NEUROLOGY, INC., a professional corporation organized under the laws of the State of North Carolina, hereinafter referred to as "Contractor", and Michael Barnett, M.D., a physician duly licensed to practice medicine in the aforesaid State, hereinafter referred to as "Contractee";

W I T N E S S E T H:

THAT WHEREAS, Contractor, having been organized for the purpose of providing the general public with the services of physicians, and more particularly of physicians skilled in the specialty of neurology desires to employ Contractee to assist in his professional capacity in the fulfillment of the aforesaid purpose;

AND WHEREAS, Contractee, understanding and accepting the conditions of the contract set forth herein, desires to be under contract by Contractor to assist in his professional capacity as aforesaid.

NOTE, THEREFORE, in consideration of the promises and of the mutual covenants herein contained, and of other good and valuable considerations, the parties do hereby covenant and agree together as follows:

1.    Commencing on or about the 1st day of January, 2003, Contractor will contract Contractee on the understanding that Contractee will devote his utmost knowledge and best skill to the care of such patients as shall be entrusted to him under general rules from time to time promulgated by Contractor through its Board of Directors.

2.    Contractee hereby pledges his active and industrious practice of his profession in Contractor's interest and his faithful adherence to the Principles of Medical Ethics of the American Medical Association. Contractee hereby specifically agrees and covenants that the occurrence of any one of the following events shall entitle Contractor, by a two-thirds (2/3"s) vote of

its Board of Directors (Contractee, if a member of the Board, not voting), to discharge him from the contract with or without notice:

(a)   the withdrawal or suspension of his license to practice medicine and surgery in North Carolina;

(b)   the withdrawal or suspension of his license to dispense or prescribe narcotic drugs;

(c)   his being held guilty of professional misconduct by any professional organization having jurisdiction;

(d)   his inability to acquire medical liability insurance; or

(e)   his excessive use of alcohol or any addictive drug or other substance.

3.   Contractor undertakes that in specific areas of diagnosis and treatment, Contractee's professional responsibility shall be unchallenged, and Contractor will not, through its Board of Directors or any of its officers or Contractees, direct, supervise or control Contractee in his professional care of any individual patient. This includes, but is not limited to, Contractee's control over MRI protocols on his patients. Provided always that this Section shall not prevent Contractor from

(a)   promulgating    general    rules    governing    the rendering of medical services to patients, and

(b)   relieving Contractee of the care of an individual patient when, in the opinion of Contractor's Board of Directors, Contractee is not observing such general rules or performing up to the standards required by Contractor.

4.   Contractor hereby specifically undertakes to make available to Contractee the advice and assistance of all or any of its other physician-Contractees in the diagnosis and treatment of any case.   Contractor shall furnish Contractee with an office, stenographic services, supplies and equipment, and such other facilities and services as are suitable to the position of the Contractee and necessary for the performance of his duties hereunder.

5.   Contractee hereby specifically undertakes to advise and assist on request any other physician-Contractee of Contractor in the diagnosis and treatment of any case.   Contractee shall have

the right to make use of such of his own property as he may desire and such property shall be and remain that of the Contractee.

6. Contractor agrees that in emergency situations Contractee may, in his sole discretion, seek advice and assistance from physicians not employed by Contractor. Contractee agrees that if he desires the advice or assistance of an outside physician in a non-emergency situation, he will follow such procedure as may be prescribed by Contractor for obtaining the same.

7. Contractee hereby expressly agrees and covenants that the compensation and benefits received by him under this Agreement shall satisfy and discharge in full all his claims upon Contractor for compensation in respect of his professional services. Contractee acknowledges that his service in the employment in no way confers upon him any ownership interest in or personal claim upon any fees charged by Contractor for his services, whether the same are collected during the contract or after the termination thereof, and he hereby disclaims and renounces any such interest or claim.

8. Contractee's compensation shall be fixed by Contractor's Board of Directors, and shall consist of payment for each MRI/MRA, CT, X-ray and Ultrasound the Contractee reads and interprets with a completed report. Payment will be made to the Contractee the 5th of the month for the previous months readings/interpretations. Fees are established as follows:

| | |
|---|---|
| MRI or MRA | $120.00 per scan first year |
| | $125.00 per scan thereafter |
| CT | $ 90.00 per scan |
| X-ray | $ 7.00 set |
| Ultrasound | $ 60.00 procedure |

9. Contractor and Contractee agree that the Professional Corporation Act, Chapter 55B of the General Statues of North Carolina, the Regulations of the Board of Medical Examiners of the State of North Carolina promulgated pursuant thereto, Contractor's Articles of Incorporation and By-Laws, together with all currently effective supplements, modifications, and regulations made thereunder, are hereby expressly referred to and specifically incorporated into this Agreement by reference and made a part hereof.

10.   Contractee agrees that all new general rules and regulations, and all resolutions of Contractor's Board of Directors governing the employment of physicians generally, shall modify this Agreement as if they had been included in it and had been made part of it, provided always that no new rule, regulation or resolution affecting Contractee only shall modify this Agreement unless his consent be endorsed thereon.

11.   The term of this contract shall be for two (2) years, with option for one additional year.

12.   This Contract may be terminated by mutual agreement of both the Contractor and the Contractee; the Contract will terminated sixty (60) days after the date of such an agreement.

13.   The Contractor shall take out and keep in force malpractice and professional liability insurance for the Contractee in an amount at least as great as One Million Dollars ($1,000,000.00/$3,000,000.00) to cover liabilities resulting to the Contractor and to the Contractee individually from the practice of medicine.

14.   Any notice required hereunder shall be deemed sufficient and service thereof completed upon receipt, refusal or non-delivery of same if the same be in writing and hand delivered or addressed to the addressee at the last known post office address thereof in case of the Contractee or the registered office in the case of the Contractor, and mailed certified or registered mail, with return receipt requested, postage prepaid.

15.   For the term of this Contract, Contractor guarantees Contractee a minimum of two consecutive regular and consistent weekdays of work per week, the two (2) days set by prior mutual agreement. Contractee will be given the opportunity to read all MRI cases performed on those days.  Any additional days beyond these two (2) days per week must be by mutual agreement of both parties.

16.   Contractee can take up to six (6) weeks (twelve work days) unpaid vacation at his discretion, upon giving Contractor prior notice.  Additional vacation (excluding medical or family emergencies) must be by mutual agreement.

17.   Contractor will pay for all of Contractee's and Contractee's families' relocation expenses up to a maximum of $8000.00.

18.    Contractor will pay for Contractee's North Carolina licensure fees.

19.    Contractor agrees to add Contractee to their group medical insurance policy, offering Contractee the same coverage as partners with Contractee reimbursing the Contractor for the cost of the premiums.

20.    This Agreement shall be subject to and governed by the laws of North Carolina irrespective of the fact that Contractee may be or may become a resident of another State.

21.    The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions hereof, and this Agreement shall be construed in all respects as if such invalid or unenforceable provisions were not contained herein.

22.    This Agreement shall be binding upon and inure to the benefit of the Contractor and the Contractee and their respective heirs, legal representatives, executors, administrators, successors and assigns.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals, the day and year first above written, all in duplicate originals.

EAST CAROLINA NEUROLOY, INC.

By: _____
Donald L. Price, Jr., M.D.
President

(CORPORATE SEAL)

ATTEST:

_____
Daniel O. Lee, M.D.
Secretary

_____ (SEAL)
Michael Barnett, M.D.