SCANNED

*CA.04-30001-MAP*

## COMMONWEALTH OF MASSACHUSETTS

Hampshire, ss

**Superior Court**
**Civil Action No. 2003-246**

### CERTIFICATION

I , Harry Jekanowski, Jr., Clerk of the Superior Court for the County of Hampshire do hereby

certify that the attached is a true copy of the entire case file in Civil Action 03-246.

Michael J. Barnett, M.D.

VS.

East Carolina Neurology, Inc.



Witness my hand and the seal of the

Superior Court Department of the Trial

Court this 6th day of January 2004.

Harry Jekanowski, Jr.
Clerk/Magistrate

**Commonwealth of Massachusetts**
HAMPSHIRE SUPERIOR COURT
Case Summary
Civil Docket

# HSCV2003-00246
## Barnett M.D. v East Carolina Neurology Inc

| | | | | | |
|---|---|---|---|---|---|
| File Date | 11/12/2003 | Status | Disposed: transfered to other court (dtrans) | | |
| Status Date | 01/06/2004 | Session | A - Civil A- CtRm 2-3rd fl | | |
| Origin | 1 | Case Type | A99 - Misc contract | | |
| Lead Case | | Track | F | | |

| | | | | | |
|---|---|---|---|---|---|
| Service | 02/10/2004 | Answer | 04/10/2004 | Rule12/19/20 | 04/10/2004 |
| Rule 15 | 04/10/2004 | Discovery | 09/07/2004 | Rule 56 | 10/07/2004 |
| Final PTC | 11/06/2004 | Disposition | 01/05/2005 | Jury Trial | Yes |

### PARTIES

**Plaintiff**
Michael J Barnett M.D.
Active 11/12/2003

Private Counsel 345800
Harry L Miles
Green Miles Lipton White & Fitz-Gibbon
77 Pleasant Street
PO Box 210
Northampton, MA 01061-0210
Phone: 413-586-8218
Fax: 413-584-6278
Active 11/12/2003 Notify

**Defendant**
East Carolina Neurology Inc
Served: 12/17/2003
Served (answr pending) 12/29/2003

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 11/12/2003 | 1.0 | Complaint with jury claim & civil action cover sheet filed |
| 11/12/2003 | | Origin 1, Type A99, Track F. |
| 11/12/2003 | | Tracking notice mailed to Attorney Miles. |
| 11/12/2003 | 2.0 | Plaintiff Michael J Barnett M.D.'s MOTION to admit James K. Dorsett, III as counsel pro hac vice for Michael J Barnett M.D. |
| 11/12/2003 | 3.0 | Plaintiff Michael J Barnett M.D.'s MOTION to admit Susan H. Hargrove as counsel pro hac vice for Michael J Barnett M.D. |
| 11/12/2003 | | Case selected for review pursuant to ST.1996.c358,s.5 |
| 11/13/2003 | | MOTION (P#2) ALLOWED  (Velis, J) Notices mailed November 14, 2003 |
| 11/13/2003 | | MOTION (P#3) ALLOWED  (Velis, J.) Notices mailed November 14, 2003 |
| 12/29/2003 | 4.0 | SERVICE RETURNED:  East Carolina Neurology Inc(Defendant) |
| 01/05/2004 | 5.0 | Notice for Removal to the United States District Court filed by East Carolina Neurology Inc |
| 01/06/2004 | | Case REMOVED this date to US District Court of Massachusetts. Certified copy of entire file mailed to U. S. District Court in Springfield. |

### EVENTS

CLERK'S LOG

VS.

03 246

Plaintiff                                          Defendant

Counsel for Plaintiff                              Counsel for Defendant

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| DATE | JUDGE | PROCEDURE | CLERK | STENO |
|------|-------|-----------|-------|-------|
|      |       |           |       |       |
|      |       |           |       |       |
|      |       |           |       |       |
|      |       |           |       |       |
|      |       |           |       |       |
|      |       |           |       |       |
|      |       |           |       |       |
|      |       |           |       |       |
|      |       |           |       |       |
|      |       |           |       |       |
|      |       |           |       |       |
|      |       |           |       |       |
|      |       |           |       |       |
|      |       |           |       |       |
|      |       |           |       |       |
|      |       |           |       |       |
|      |       |           |       |       |
|      |       |           |       |       |
|      |       |           |       |       |
|      |       |           |       |       |
|      |       |           |       |       |
|      |       |           |       |       |
|      |       |           |       |       |
|      |       |           |       |       |

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) 03 246 | Trial Court of Massachusetts Superior Court Department HAMPSHIRE SUPERIOR CRT Hampshire HARRY OF HAYNHOUSE IN |
|---|---|---|

| PLAINTIFF(S) Michael Barnett | DEFENDANT(S) CLERK East Carolina Neurology, Inc. 2003 NOV 12 A 11: 33 |
|---|---|
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Harry L. Miles, Green, Miles, Lipton & Fitz-Gibbon, Northampton, MA  (413) 586-8218 Board of Bar Overseers number: 345800 | ATTORNEY (if known) |

## Origin code and track designation

Place an x in one box only:

- [X] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

CODE NO.        TYPE OF ACTION (specify)      TRACK        IS THIS A JURY CASE?

   A99            Breach of Contract      ( F )        ( X ) Yes      ( ) No

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages.  For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A.  Documented medical expenses to date:
  1.   Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . . .
  2.   Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . . .
  3.   Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . . .
  4.   Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . . .
  5.   Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . . .
                                                                                  Subtotal $. . . . . . . . . . . .
B.  Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . . .
C.  Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . . .
D.  Reasonably anticipated future medical and hospital expenses . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . . .
E.  Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . . .
F.  Other documented items of damages (describe)
                                                                                  $ . . . . . . . . . . .
G.  Brief description of plaintiff's injury, including nature and extent of injury (describe)

                                                                                  $ . . . . . . . . . . .
                                                                              TOTAL $. . . . . . . . . . . .

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

Plaintiff and Defendant entered into a contract for services with a term of two years.  Plaintiff performed under the contract, but the Defendant terminated the contract.  Plaintiff expects his compensation under the contract would have exceeded $250,000.00.

                                                                              TOTAL $. . . . . . . . . . .

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____        DATE: 11/12/03

03 246

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT OF
THE TRIAL COURT OF THE COMMONWEALTH

HAMPSHIRE SUPERIOR CRT
HARRY JEKANOWSKI JR
CLERK

2003 NOV 12 A 11: 34

Hampshire Division
Civil Action No. 03-___

- - - - - - - - - - - - - - - - - - - - - - -

MICHAEL J. BARNETT, M.D., Plaintiff, A000011/12/03CIVIL FEES   240.00

v.

EAST CAROLINA NEUROLOGY, INC., Defendant. A000011/12/03SEC    20.00

============================================
A000011/12/03SURCHARGE   15.00

COMPLAINT AND DEMAND FOR JURY TRIAL

===================================

Michael J. Barnett, M.D. ("Dr. Barnett" or "Plaintiff"),

complaining of the acts of Defendant, East Carolina Neurology,

Inc., alleges and says the following:

PARTIES.

1.   Plaintiff is, and at all times relevant to this action

has been, a citizen and resident of Hampshire County,

Massachusetts.

2.   East Carolina Neurology, Inc. ("ECN" or "Defendant")

is a professional corporation organized and existing in

accordance with the laws of the State of North Carolina.

JURISDICTION AND VENUE.

3.   ECN transacts business in the Commonwealth of

Massachusetts, regularly does or solicits business, engages in a

persistent course of conduct and derives substantial revenue
from services rendered in this Commonwealth.

4.    This Court has jurisdiction over the Defendant under
G.L. c. 223A, §3.

5.    The Plaintiff resides and does business in Hampshire
County, Massachusetts.

STATEMENT OF FACTS COMMON TO ALL COUNTS.

6.    Dr. Barnett is a physician licensed to practice
medicine in the Commonwealth of Massachusetts and the State of
North Carolina, among others.  Dr. Barnett has been a board
certified radiologist since 1987 and has completed a fellowship
in magnetic resonance imaging.

7.    In 2002 Defendant, acting by and through its
authorized principals and employees, recruited Dr. Barnett in
the Commonwealth of Massachusetts to practice radiology with
Defendant in the State of North Carolina.

8.    Upon information and belief, several members of ECN
were opposed to hiring a radiologist at the time that Dr.
Barnett was hired, preferring to limit costs and to obtain
radiology services from a contract radiologist who was working
two days per week for ECN, an ECN neurologist who had some
training in magnetic resonance imaging but was not a
radiologist, and/or from hiring another neurologist who had the
capacity to read magnetic resonance images.

#BarnettComplaint(3)v2

2

9.    At the time that Dr. Barnett was considering accepting an offer to practice with Defendant, he was simultaneously considering an offer from another practice located in Colorado.

10.    Due to Dr. Barnett's concerns about Defendant's possible lack of commitment to maintaining a relationship with him for a period sufficient to justify his turning down other offers, Dr. Barnett insisted that Defendant commit in writing to a two year contract term which could be terminated unilaterally by ECN only for specific, clearly definable misconduct, including withdrawal or suspension of his license to practice medicine or surgery in North Carolina, withdrawal or suspension of his license to dispense or prescribe narcotic drugs, being held guilty of professional misconduct by a professional organization having jurisdiction over him, inability to acquire professional liability insurance, or excessive use of alcohol or addictive drugs. A copy of that contract is attached hereto, incorporated herein by reference, and marked as Exhibit "A."

11.    In order to induce Dr. Barnett to enter an agreement to practice radiology with Defendant to fill an immediate need of the practice, Defendant agreed to the contract term and limits on discharge criteria required by Dr. Barnett.

12.    Upon information and belief, when Defendant agreed to the contract term and limitations on discharge criteria required by Dr. Barnett, Defendant did not intend to continue to employ

#BarnettComplaint(3)v2

3

Dr. Barnett for the term period, regardless of whether the contractual criteria for discharge existed.

13.  Dr. Barnett relied on Defendant's agreement to the contract term and limitations on discharge to his deception and detriment, foregoing other opportunities in order to enter into a contract with Defendant.

14.  On or about September 20, 2002, Dr. Barnett entered into an agreement with Defendant (the "Contract") pursuant to which he would practice radiology with the Defendant on a minimum of two consecutive regular and consistent workdays per week to be set by mutual agreement.  (Exh. A, ¶ 15).

15.  The Contract was for a definite duration of two years. (Contract, ¶ 11).

16.  The Contract provided that Dr. Barnett would be compensated in accordance with a specific fee schedule for each MRI/MRA, CT, X-Ray and Ultrasound read by Dr. Barnett. (Contract, ¶ 8).

17.  The Contract mandated that Dr. Barnett could only be discharged by Defendant upon a two-thirds vote of Defendant's Board of Directors due to the occurrence of one of the following:

    a)   the withdrawal or suspension of his license to practice medicine or surgery in North Carolina;

    b)   the withdrawal or suspension of his license to dispense or prescribe narcotic drugs;

c)   his being held guilty of professional misconduct
by any professional organization having jurisdiction;

d)   his inability to acquire medical liability
insurance; or

e)   his excessive use of alcohol or any addictive
drug or other substance.

(Contract, ¶ 2).

18.   The duration of the Contract, the compensation
specified in the Contract and the limitations on the grounds for
unilateral termination of the Contract by Defendant were
material to Dr. Barnett's decision to enter into the Contract
and to forego other opportunities available to him at the time
he entered into the Contract with Defendant.

19.   Dr. Barnett began working for Defendant pursuant to
the contract on or about January 1, 2003.

20.   Approximately one week after Dr. Barnett began working
for the Defendant, he became aware that the defendant was
actively recruiting an additional neurologist who could read
magnetic resonance images.

21.   For the period from January 1, 2003 through March 21,
2003, Dr. Barnett performed valuable services for ENC and its
patients.   During that time period, Dr. Barnett received average
compensation of $6155.00 per two-day work week.

22.   Dr. Barnett performed all of his obligations pursuant
to the Contract.

#BarnettComplaint(3)v2

5

23.   On or about March 21, 2003, the Defendant terminated the contract and discharged Dr. Barnett.

24.   Defendant's termination of Dr. Barnett was not in accordance with the Contract nor was it for any of the five grounds specified in the termination provision of the Contract.

25.   At the time of Dr. Barnett's termination, Defendant did not allege that Dr. Barnett's termination was based upon any of the five grounds for termination specified in the termination provision of the Contract.

26.   Defendant's termination of Dr. Barnett was wrongful and constituted a breach of the Contract.

27.   Although Defendant promoted dissatisfaction with Dr. Barnett's services as a pretext for its termination of the contract, Dr. Barnett alleges, on information and belief, that his discharge was due to Defendant's dissatisfaction with the economic consequences of its decision to enter into the Contract with Dr. Barnett, and its interest in obtaining the services provided by Dr. Barnett more cheaply from another source.

28.   Since his discharge by Defendant, Dr. Barnett has engaged in reasonable efforts to mitigate his damages by obtaining an engagement comparable to his contractual relationship with Defendant.

#BarnettComplaint(3)v2

### FIRST CLAIM FOR RELIEF
### Breach of Contract

29.    Plaintiff realleges paragraphs 1 through 28 and incorporates them by reference as though fully set forth.

30.    Defendant's discharge of Plaintiff was a breach of the Contract.

31.    Plaintiff did not engage in any conduct that would justify his discharge pursuant to the Contract.

32.    The breach of the Contract has caused Plaintiff to suffer substantial damages in excess of Twenty-five thousand ($25,000) dollars, including lost income, and Plaintiff is entitled damages sufficient to put him in the same position that he would have been in had Defendant not breached the Contract.

### SECOND CLAIM FOR RELIEF
### Breach of Duty of Good Faith and Fair Dealing

33.    Plaintiff realleges paragraphs 1 through 29 and incorporates them by reference as though fully set forth.

34.    Under the laws of the Commonwealth of Massachusetts and the State of North Carolina, every contract includes an implied duty to perform the subject matter of the contract fairly and in good faith.  Defendant's precipitous and unjustified discharge of Plaintiff, in violation of the plain language of the Contract, constitutes a breach of the implied obligation of good faith and fair dealing pursuant to the Contract.

#BarnettComplaint(3)v2

7

35.   Defendant's breach of its duty of good faith and fair
dealing has proximately and directly caused and will continue to
cause significant harm to Plaintiff, including damages in excess
of twenty-five thousand ($25,000) dollars.

THIRD CLAIM FOR RELIEF
Fraudulent Inducement

36.   Plaintiff realleges paragraphs 1 through 35 and
incorporates them by reference as though fully set forth.

37.   The representations of Defendant's agents to Plaintiff
concerning Defendant's commitment to retain Plaintiff's services
for a period of two years, with Plaintiff to be dischargeable
only upon the occurrence of an event described in paragraph 2 of
the Contract, were false and Defendant's agents knew the
representations were false at the time they were made or acted
in reckless disregard for their truth or falsity.

38.   Defendant's agent's false representations were made
with intent to deceive Plaintiff and to induce Plaintiff to
enter into the Contract and provide radiology services for
Defendant and they did in fact deceive Plaintiff and in reliance
on them Plaintiff declined other opportunities and entered into
the Contract.

39.   As a direct and proximate result of Defendant's
fraudulent inducement, Plaintiff has been damaged in an amount
in excess of twenty-five thousand ($25,000) dollars.

#BarnettComplaint(3)v2

8

FOURTH CAUSE OF ACTION
Unfair and Deceptive Trade Practices-North Carolina Law

40.  Plaintiff realleges the allegations of paragraphs 1 -
39 and incorporates them by reference as though fully set forth.

41.  Defendant's actions and false representations were in
or affecting commerce and constitute unfair or deceptive trade
practices in violation of North Carolina General Statutes  § 75-
1.1.

42.  Defendant's unfair and deceptive trade practices have
damaged Plaintiff in an amount in excess of twenty-five thousand
($25,000) and Plaintiff is entitled to have his damages trebled
and to recover attorneys' fees incurred in this action.

FIFTH CAUSE OF ACTION.
Unfair and Deceptive Trade Practices - Massachusetts Law

43.  Plaintiff realleges the allegations of paragraphs 1 -
41 and incorporates them by reference as though fully set forth.

44.  Defendant has committed unfair and deceptive acts and
practices in violation of G.L. c. 93A, §11.

45.  The Defendant committed unfair and deceptive acts and
practices in violation of G.L. c. 93A, §11, knowingly,
intentionally, and in bad faith.

45.  By reason of the Defendant's unfair and deceptive acts
and practices, the Plaintiff has lost money and property of a
value that exceeds twenty-five thousand ($25,000) dollars.

WHEREFORE, Plaintiff respectfully prays the Court for relief against the Defendant as follows:

1.    That Plaintiff have and recover compensatory damages from Defendant in an  amount to be established at trial, together with interest thereon as permitted by law;

2.    That Plaintiff have and recover treble damages and attorneys' fees against Defendant for its unfair trade practices under Plaintiff's Fourth Cause of Action, or, in the alternative, that Plaintiff have and recover exemplary damages of not more than three, nor less than two, times his actual damages under Plaintiff's Fifth Cause of Action;

3.    That Plaintiff be awarded its costs and expenses incurred in connection with this action, including attorneys' fees and expert fees as provided by law;

4.    That Plaintiff be awarded punitive damages and interest thereon as permitted by law under Plaintiff's Third Cause of Action;

5.    For such other and further relief as the Court may deem just and proper.

### Demand for Jury Trial

The Plaintiff claims trial by jury of all issues so triable.

Dated at Northampton, November 12, 2003.

#BarnettComplaint(3)v2

Respectfully submitted,
The Plaintiff by his attorneys:
*Green, Miles, Lipton & Fitz-Gibbon*

By_____
        Harry L. Miles
        77 Pleasant Street, P.O. Box 210
        Northampton, Massachusetts 01061
        Telephone 413.584.6278
        Facsimile 413.584.6278
        BBO#: 345800

                - and -

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P.*


By _____
        James K. Dorsett, III, N.C. State Bar No. 7695
        Susan H. Hargrove, N.C. State Bar No. 18771
        Post Office Box 2611
        Raleigh, North Carolina 27602-2611
        Telephone: (919) 821-1220
        Facsimile: (919) 821-6800

(Motion for *Pro Hac Vice Admission* Pending)

NORTH CAROLINA

<u>CONTRACT AGREEMENT</u>

PITT COUNTY


THIS CONTRACTUAL AGREEMENT, made this 20th day of
September, 2002, by and between EAST CAROLINA NEUROLOGY,
INC., a professional corporation organized under the laws of the
State of North Carolina, hereinafter referred to as "Contractor",
and Michael Barnett, M.D., a physician duly licensed to practice
medicine in the aforesaid State, hereinafter referred to as
"Contractee";

W I T N E S S E T H:

THAT WHEREAS, Contractor, having been organized
for the purpose of providing the general public with the services of
physicians, and more particularly of physicians skilled in the
specialty of neurology desires to employ Contractee to assist in his
professional capacity in the fulfillment of the aforesaid purpose;

AND WHEREAS, Contractee, understanding and
accepting the conditions of the contract set forth herein, desires to
be under contract by Contractor to assist in his professional
capacity as aforesaid.

NOTE, THEREFORE, in consideration of the promises
and of the mutual covenants herein contained, and of other good
and valuable considerations, the parties do hereby covenant and
agree together as follows:

1.    Commencing on or about the 1st day of January,
2003, Contractor will contract Contractee on the understanding
that Contractee will devote his utmost knowledge and best skill to
the care of such patients as shall be entrusted to him under general
rules from time to time promulgated by Contractor through its
Board of Directors.

2.    Contractee hereby pledges his active and industrious practice
    of his profession in Contractor's interest and his faithful
    adherence to the Principles of Medical Ethics of the American
    Medical Association.  Contractee hereby specifically agrees
    and covenants that the occurrence of any one of the following
    events shall entitle Contractor, by a two-thirds (2/3"s) vote of

its Board of Directors (Contractee, if a member of the Board, not voting), to discharge him from the contract with or without notice:

(a) the withdrawal or suspension of his license to practice medicine and surgery in North Carolina;

(b) the withdrawal or suspension of his license to dispense or prescribe narcotic drugs;

(c) his being held guilty of professional misconduct by any professional organization having jurisdiction;

(d) his inability to acquire medical liability insurance; or

(e) his excessive use of alcohol or any addictive drug or other substance.

3. Contractor undertakes that in specific areas of diagnosis and treatment, Contractee's professional responsibility shall be unchallenged, and Contractor will not, through its Board of Directors or any of its officers or Contractees, direct, supervise or control Contractee in his professional care of any individual patient. This includes, but is not limited to, Contractee's control over MRI protocols on his patients. Provided always that this Section shall not prevent Contractor from

(a) promulgating general rules governing the rendering of medical services to patients, and

(b) relieving Contractee of the care of an individual patient when, in the opinion of Contractor's Board of Directors, Contractee is not observing such general rules or performing up to the standards required by Contractor.

4. Contractor hereby specifically undertakes to make available to Contractee the advice and assistance of all or any of its other physician-Contractees in the diagnosis and treatment of any case. Contractor shall furnish Contractee with an office, stenographic services, supplies and equipment, and such other facilities and services as are suitable to the position of the Contractee and necessary for the performance of his duties hereunder.

5. Contractee hereby specifically undertakes to advise and assist on request any other physician-Contractee of Contractor in the diagnosis and treatment of any case. Contractee shall have

10. Contractee agrees that all new general rules and regulations, and all resolutions of Contractor's Board of Directors governing the employment of physicians generally, shall modify this Agreement as if they had been included in it and had been made part of it, provided always that no new rule, regulation or resolution affecting Contractee only shall modify this Agreement unless his consent be endorsed thereon.

11. The term of this contract shall be for two (2) years, with option for one additional year.

12. This Contract may be terminated by mutual agreement of both the Contractor and the Contractee; the Contract will terminated sixty (60) days after the date of such an agreement.

13. The Contractor shall take out and keep in force malpractice and professional liability insurance for the Contractee in an amount at least as great as One Million Dollars ($1,000,000.00/$3,000,000.00) to cover liabilities resulting to the Contractor and to the Contractee individually from the practice of medicine.

14. Any notice required hereunder shall be deemed sufficient and service thereof completed upon receipt, refusal or non-delivery of same if the same be in writing and hand delivered or addressed to the addressee at the last known post office address thereof in case of the Contractee or the registered office in the case of the Contractor, and mailed certified or registered mail, with return receipt requested, postage prepaid.

15. For the term of this Contract, Contractor guarantees Contractee a minimum of two consecutive regular and consistent weekdays of work per week, the two (2) days set by prior mutual agreement. Contractee will be given the opportunity to read all MRI cases performed on those days. Any additional days beyond these two (2) days per week must be by mutual agreement of both parties.

16. Contractee can take up to six (6) weeks (twelve work days) unpaid vacation at his discretion, upon giving Contractor prior notice. Additional vacation (excluding medical or family emergencies) must be by mutual agreement.

17. Contractor will pay for all of Contractee's and Contractee's families' relocation expenses up to a maximum of $8000.00.

03 2462

THE COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF THE TRIAL COURT

HAMPSHIRE SUPERIOR CRT
HARRY JEKANOWSKI JR
CLERK

Hampshire Division
Docket No.:

2003 NOV 12 A 11: 34

- - - - - - - - - - - - - - - - - - - - - - - - -

MICHAEL BARNETT, Plaintiff,

v.

*11/13/03*
*allowed*

EAST CAROLINA NEUROLOGY, INC., Defendant.

===================================

**MOTION FOR ADMISSION PRO HAC VICE**

===================================

*By the Court (Velis)*
*Attest: Terry G. Fox*
*Ass't Clerk*

Harry L. Miles, Attorney for the Plaintiff Michael
Barnett, hereby moves for leave to appear in this case for
Attorney James K. Dorsett, III of Raleigh, North Carolina
to appear *Pro Hac Vice* in this case.  In support of this
Motion, Harry L. Miles states as follows:

1.  I am one of the attorneys of record for Plaintiff,
    Michael Barnett, in this case.  I am a partner in
    the firm of Green, Miles, Lipton, & Fitz-Gibbon,
    which has its offices at 77 Pleasant Street,
    Northampton, Massachusetts 01060.

2.  The Certificate of Good Standing of Attorney James
    K. Dorsett, III is attached to this Motion as
    Exhibit "A".  As described in his attached
    Certificate, Attorney Dorsett is a member of the
    firm of Smith, Anderson, Blount, Dorsett, Mitchell &
    Jernigan, L.L.P., 2500 Wachovia Capital Center, P.O.
    Box 2611, Raleigh, North Carolina.  He is an active
    member in good standing of the Bar of the State of