UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 3:04-CV-30001 (MAP)

MICHAEL J. BARNETT, M.D.            )        MEMORANDUM IN SUPPORT OF
                                   )        MOTION TO DISMISS FOR LACK OF
            Plaintiff,             )        PERSONAL JURISDICTION OR, IN
                                   )        THE ALTERNATIVE, FOR
EAST CAROLINA NEUROLOGY, INC.      )        TRANSFER
            Defendant.             )

## Introduction

Defendant East Carolina Neurology, Inc. ("ECN") is a North Carolina corporation that

provides medical neurology services to physicians and patients exclusively in eastern North

Carolina. ECN transacts no business in Massachusetts. In late 2002 and early 2003, ECN had

limited contacts with Massachusetts merely because plaintiff Michael J. Barnett, M.D., a

Massachusetts resident, sent ECN an unsolicited communication seeking employment. Plaintiff

traveled to North Carolina to pursue employment with ECN, to obtain a license to practice

medicine there, and to perform services pursuant to an employment contract with ECN. After

ECN terminated his contract, plaintiff filed suit in Massachusetts.

ECN moves, pursuant to Fed. R. Civ. P. 12(b)(2), to dismiss this action for lack of

personal jurisdiction on the grounds that ECN does not transact business in Massachusetts within

the meaning of the Massachusetts long-arm statute and otherwise lacks the minimum contacts

with the Commonwealth required to satisfy constitutional due process concerns. In the

alternative, ECN moves, pursuant to 28 U.S.C. § 1404(a), to transfer the action to the Eastern

District of North Carolina, where, with the exception of plaintiff, all witnesses known to ECN,

all records, and all potential exhibits are located. ECN submits this brief in support of its motion.

259600

## I. THIS COURT LACKS IN PERSONAL JURISDICTION OVER DEFENDANT

### Factual Background

ECN is a North Carolina corporation whose physicians serve as consultants in medical neurology to physicians and patients in eastern North Carolina. Affidavit of David E. Cundiff ("Cundiff Aff.") ¶¶ 2, 3. ECN's place of business is in Greenville, North Carolina, where it operates a clinic and a magnetic resonance imaging ("MRI") center. *Id.* ¶ 3. ECN and its member physicians are closely affiliated with the East Carolina University School of Medicine. *Id.* ¶ 3. ECN draws its patients almost exclusively from the eastern third of North Carolina. *Id.*

ECN does not maintain a place of business in Massachusetts, is not licensed to do business in Massachusetts, and has no agents in Massachusetts. *Id.* ¶ 4. ECN does not maintain any records in Massachusetts. *Id.* ¶ 5. ECN does not advertise in or solicit business from physicians or patients in Massachusetts. *Id.*

In or about May, 2002, plaintiff, a neuroimaging radiologist and a resident of Massachusetts, contacted ECN to express his interest in a part-time position with the corporation. Affidavit of Donald L. Price, M.D. ("Price Aff.") ¶ 4. Donald L. Price, M.D., who was then President of ECN, responded to plaintiff's inquiry and informed plaintiff that although ECN had no such open positions at the time, he would keep plaintiff's curriculum vitae on file. *Id.* ¶ 5. Some months later, when one of ECN's neuroimaging radiologists retired, Dr. Price contacted plaintiff to ask whether he was still interested in pursuing employment in North Carolina. He was, and in or about late August or early September, plaintiff traveled to North Carolina to visit Greenville to see if it was an area in which he might like to work. *Id.* ¶ 7.

In mid-September, 2002, plaintiff returned to North Carolina for several days, during which he visited ECN, met with several individuals affiliated with ECN, including Dr. Price and

David E. Cundiff, ECN's administrator, and had a formal interview. *Id.* ¶ 8. At the end of plaintiff's interview, ECN offered him a contract for part-time employment. *Id.* ¶ 9. After plaintiff returned to Massachusetts, he communicated by telephone and email with individuals at ECN concerning the terms of an employment contract. *Id.* ¶ 10. At no time did any representative of ECN travel to Massachusetts for the purpose of engaging in discussions with plaintiff concerning employment with ECN. *Id.* ¶ 11.

Plaintiff signed the final version of the contract and retuned it to ECN with a letter dated October 22, 2002. Cundiff Aff. ¶ 9 and Exhibit 1. Upon receipt of the signed contract from plaintiff, Dr. Price signed it in North Carolina on behalf of ECN. Price Aff. ¶ 13.

Under the contract, the parties agreed, in relevant part, that plaintiff would work at ECN a minimum of two consecutive and consistent weekdays per week. Cundiff Aff. Exhibit 2 ¶ 15. Plaintiff had the opportunity to read all MRI cases performed on those days, as well as CTs, X-rays, and ultrasounds. *Id.* Plaintiff's compensation for such readings was fixed according to a fee schedule set forth in the contract. *Id.* ¶ 8.

By its express terms, the contract was subject to and governed by the laws of North Carolina. *Id.* ¶ 20. Incorporated by reference into the contract were, among other things, the Regulations of the North Carolina Medical Board. *Id.* ¶ 9. The contract required that plaintiff be licensed to practice medicine and surgery in North Carolina, and ECN agreed to pay plaintiff's North Carolina licensure fee. *Id.* ¶¶ 2, 18. ECN also agreed to pay expenses associated with the relocation of plaintiff and his family to North Carolina, up to $8,000.00. *Id.* ¶ 17. Finally, under the contract, ECN agreed to take out and keep in force a policy of malpractice and professional liability insurance for plaintiff. *Id.* ¶ 13. ECN took out such a policy with the Medical Mutual Insurance Company of North Carolina. Cundiff Aff. ¶ 14.

Upon information and belief, after execution of the contract, but before beginning to work at ECN, plaintiff returned to North Carolina at least once, on or about December 5, 2002, to meet with the North Carolina Medical Board in connection with his application for a license to practice medicine in North Carolina. Price Aff. ¶ 14.

Plaintiff began working at ECN pursuant to the contract on or about January 9, 2003. *Id.* ¶ 15. Soon after plaintiff began working at ECN, some physicians, including physicians at ECN and local physicians who had referred patients to ECN for testing, expressed concerns regarding the quality of plaintiff's readings. *Id.* ¶ 18.

In or about March, 2003, Mr. Cundiff learned that plaintiff had changed one of his MRI reports and apparently had removed the original report from the patient's chart, rather than using an addendum to correct the original. Cundiff Aff. ¶ 19. A committee of ECN's physicians convened to review concerns with plaintiff's performance determined, among other things, that plaintiff had not complied with professionally accepted protocols for making corrections or additions to a medical record. *Id.* ¶¶ 20-21. Based on the committee's determination and recommendation, ECN terminated its contract with plaintiff, effective March 21, 2003. *Id.* ¶ 22. From on or about January 9, 2003, until on or about March 21, 2003, when ECN terminated his contract, plaintiff was present at ECN's MRI center in Greenville, North Carolina, two days a week, as contemplated by the parties' contract, to perform radiology services. During that time, plaintiff was present at ECN a total of 20 days. *Id.* ¶ 15.

Plaintiff commenced an action in Massachusetts Superior Court, Hampshire County, alleging breach of contact, breach of the covenant of good faith and fair dealing, fraudulent inducement, and unfair and deceptive trade practices under North Carolina and Massachusetts law. On January 5, 2004, ECN removed the action to this Court. ENC now moves to dismiss

plaintiff's complaint for lack of personal jurisdiction or, in the alternative, to transfer the action

to the Eastern District of North Carolina.

## Argument

When personal jurisdiction is contested, the plaintiff bears the burden of establishing

facts sufficient to sustain the exercise of jurisdiction over the defendant. *United Elec. Workers v.*

*163 Pleasant St. Corp.*, 960 F.2d 1080, 1090 (1st Cir. 1992).

Personal jurisdiction "is of two varieties, general and specific." *Pritzker v. Yari*, 42 F.3d

53, 59 (1st Cir. 1994). "General jurisdiction exists when the litigation is not directly founded on

the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous

and systematic activity, unrelated to the suit, in the forum state." *United Elec. Workers*, 960 F.2d

at 1088; *see also Callahan v. Harvest Bd. Int'l, Inc.*, 138 F. Supp. 2d 147, 158 (D. Mass. 2001)

("standard for evaluating whether contacts satisfy the constitutional general jurisdiction test is

considerably more stringent than that applied to specific jurisdiction questions.").

In this case, ECN has no offices or agents in Massachusetts, does no business in

Massachusetts, and solicits no business from physicians or patients in Massachusetts. ECN's

only contacts with Massachusetts were its receipt, in May, 2002, of an unsolicited letter from

plaintiff inquiring about the availability of a position with ECN and ECN's placement, in July

and November, 2002, of advertisements concerning open positions in three professional journals

that were distributed nationally, including in the Commonwealth. Representatives of ECN also

engaged in a limited exchange of telephone calls and email messages with plaintiff in connection

with the negotiation of an employment contract, which defendant signed in North Carolina and

the performance of which was expected to be, and was, rendered in North Carolina. These

contacts clearly are not "continuous and systematic" enough to confer general jurisdiction over

ECN.

"When general jurisdiction is lacking, the lens of judicial inquiry narrows to focus on specific jurisdiction." *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 144 (1ˢᵗ Cir. 1995). The existence of specific personal jurisdiction depends upon the plaintiff's ability to satisfy two requirements: "first, that the forum in which the federal district court sits has a long-arm statute that purports to grant jurisdiction over the defendant; and second, that the exercise of jurisdiction pursuant to that statute comports with the strictures of the Constitution." *Pritzker*, 42 F.3d at 60; *Foster-Miller*, 46 F.3d at 145; *Hasbro, Inc. v. Clue Computing, Inc.*, 994 F. Supp. 34, 39 (D. Mass. 1997).

For the reasons set forth below, plaintiff can establish neither that the long-arm statute applies nor that ECN has such "minimum contacts" in Massachusetts as to satisfy constitutional due process concerns.

**A.    The Massachusetts long-arm statute does not grant jurisdiction over ECN.**

Plaintiff alleges that "ECN transacts business in the Commonwealth of Massachusetts, regularly does or solicits business, engages in a persistent course of conduct and derives substantial revenue from services rendered in this Commonwealth." Complaint, ¶ 3. Based on this allegation, plaintiff asserts that M.G.L. 223A, § 3, the Massachusetts long-arm statute, provides a basis for the exercise of jurisdiction over ECN in this case. Presumably, plaintiff is relying on the "transacting business" provision of the statute. It provides, in pertinent part:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or in equity arising from the person's (a) transacting any business in this commonwealth.

For jurisdiction to exist under this provision, the facts must show both that the defendant transacted business in Massachusetts and that plaintiff's claim arises out of the transaction of that business. *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 767, 625 N.E.2d 549, 551 (1994).

1.    "Transacting any business"

The "transacting any business test" under section 3(a) is designed to identify "deliberate, as distinguished from fortuitous, contacts with the forum by the nonresident party." *Lyle Richards Int'l v. Ashworth, Inc.*, 132 F.3d 111, 112 (1st Cir. 1997); *Droukas v. Divers Training Academy, Inc.*, 375 Mass. 149, 154, 376 N.E.2d 548, 551 (1978) ("isolated transaction, with slight effect on the commerce of the Commonwealth," not transaction of business for purposes of statute). The question of what activities constitute the transaction of business in a specific case must be decided on the particular facts involved. *Droukas*, at 157, 553. The long-arm statute does not confer personal jurisdiction where the nonresident's contacts with Massachusetts were "purely incidental" to a particular business issue in litigation. *Aub v. Seclinicolor Entm't Svcs.*, 224 F. Supp. 2d 371, 373 (D. Mass. 2002) (noting that, in *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 769, 625 N.E.2d at 552, the Massachusetts Supreme Judicial Court distinguished cases in which a nonresident's contacts with the Commonwealth are "random or isolated events" from cases in which the contacts are "part of a larger systematic effort on [the nonresident's] part to obtain business from Massachusetts businesses and residents."). When "a nonresident party simply purchases goods or services from Massachusetts residents, Massachusetts courts are somewhat less inclined to find that the party is subject to personal jurisdiction here." *Id.* (citing *Good Hope Industries, Inc. v. Ryder Scott Co.*, 378 Mass. 1, 389 N.E.2d 76, 81, n. 14 (1979)).

In *Aub*, the court concluded that the defendant's contacts with the Commonwealth were "too fortuitous and incidental to fall within the reach of the Massachusetts long-arm statute." *Aub*, 224 F. Supp. 2d at 374. In that case, the business relationship between the parties grew out of a contract made in California; none of the defendant's executives ever traveled to Massachusetts; and all of the parties' face-to-face meetings took place outside Massachusetts. The defendant's reasons for hiring the plaintiff as its consultant had nothing to do with her

259600                                    7

location in Massachusetts.    The only reason the defendant ever had any contacts in Massachusetts was because the plaintiff had chosen to move her consulting business from California to Massachusetts. "The fact that there were long-distance communications between the parties by mail and telephone [was] not enough to justify the conclusion that [the defendant] transacted business in Massachusetts." *Id.*

In this case, ECN's contacts with Massachusetts were similarly limited.   ECN has no offices or agents in the Commonwealth, is not licensed to do business in Massachusetts, and does not advertise or solicit business from physicians or patients in Massachusetts.   As in *Aub*, plaintiff's location in Massachusetts played no role in ECN's decision to hire him; to the contrary, all services under the parties' contract were expected to be, and were, rendered by plaintiff at ECN's offices in Greenville, North Carolina.   ECN's limited contacts with Massachusetts arose in May, 2002, only because plaintiff contacted ECN to express an interest in a position with the corporation.  No representatives of ECN traveled to Massachusetts to meet with plaintiff, and all face-to-face meetings between plaintiff and ECN's representatives occurred in North Carolina.   Plaintiff traveled to North Carolina twice to investigate the possibility of working at ECN, once to see the Greenville area and once to meet with individuals at ECN.  He returned on at least one other occasion, to meet with the North Carolina Board of Medicine in connection with his application for licensure to practice medicine in North Carolina. After plaintiff returned to Massachusetts following his September visit to ECN, the parties engaged in a limited exchange of email and telephone correspondence concerning the details of a possible employment contract.   ECN's representative signed the contract in North Carolina. Beginning in January, 2003, until his termination in March, 2003, plaintiff returned regularly to Greenville to provide services under his contract with ECN.  Although plaintiff's initial inquiry

to ECN concerning available positions predated their publication, ECN placed advertisements concerning open positions in three professional journals with national circulation, including in Massachusetts.

ECN did nothing more than purchase services from plaintiff, a Massachusetts resident at the time he entered into the contract, to be performed in North Carolina. ECN agreed to pay plaintiff's expenses, up to $8,000, incurred in relocating the North Carolina. ECN paid plaintiff's compensation, provided administrative and technical support to plaintiff, and took out and maintained a malpractice and professional liability insurance policy covering plaintiff, all from its offices in North Carolina. ECN's negligible contacts with Massachusetts are insufficient to constitute the transaction of business in the Commonwealth under the long-arm statute. *See Droukas*, 375 Mass. at 153, 376 N.E.2d at 551 ("placement of an advertisement in a publication distributed in the Commonwealth," coupled with telephonic and written correspondence confirming the sale of two engines to plaintiff in Massachusetts and shipment of engines "collect" to the plaintiff in Massachusetts, did not constitute the transaction of business in the Commonwealth).

2.    "Arises out of"

Even where a defendant is deemed to have transacted business in Massachusetts, in order to establish jurisdiction under the long-arm statute, the plaintiff must further demonstrate that his cause of action arose from the defendant's transaction of business in the Commonwealth. *See Micro Networks Corp. v. HIG Hightec, Inc.*, 195 F. Supp. 2d 255, 262 (D. Mass. 2001) ("rational nexus" must exist between the defendant's transaction of business and the plaintiff's cause of action). This requirement involves a "but for" analysis. *Tatro*, 416 Mass. at 771, 625 N.E.2d at 554. The "arises out of" requirement in the Massachusetts long-arm statute "corresponds" to the relatedness requirement under the due process clause. *Foster-Miller*, 46 F.3d at 144 and n. 3; *see*

*also Fern v. Immergut*, 55 Mass. App. Ct. 577, 583-84, 773 N.E.2d 972, 977 (Mass. App. Ct. 2002). In evaluating contacts related to a contract claim, the court must determine "whether the defendant's forum based activities are instrumental in the formation or the breach of the contract." *Callahan*, 138 F. Supp. 2d at 160 (citing *Massachusetts Sch. of Law v. ABA*, 142 F.3d 26, 34 (1st Cir. 1998)).

In this case, plaintiff signed the contract in Massachusetts and mailed it to ECN in North Carolina, where ECN's representatives signed it.[1] By its terms, the contract was to be subject to and governed by the laws of North Carolina. Exhibit 2 to Cundiff Aff., ¶ 20. Plaintiff's performance of services pursuant to the contract was expected to be, and was, rendered in North Carolina. Plaintiff's acts and omissions giving rise to ECN's termination of the contract, as well as ECN's decision to terminate, occurred in North Carolina. In sum, plaintiff cannot demonstrate that either the formation of the contract or its alleged breach relates to any conduct of ECN in the Commonwealth of Massachusetts.[2] Given these facts concerning the parties' dealings, plaintiff cannot credibly claim that "but for" some Massachusetts contact by ECN, he would not have been damaged as he alleges. For these reasons, plaintiff fails to satisfy the second requirement of the long-arm statute, and his complaint should be dismissed for lack of personal jurisdiction.

**B.    The exercise of jurisdiction over ECN does not comport with due process.**

Even if the long-arm statute applied here, plaintiff still could not establish that the exercise of personal jurisdiction in Massachusetts satisfies constitutional due process concerns.

---

[1] The contract, therefore, was entered into in North Carolina. *See Rental Car of New Hampshire, Inc. v. Westinghouse Elec. Corp.*, 496 F. Supp. 373, 381 (D. Mass. 1980) (contract deemed made where it was accepted by the defendant in Florida); *see also Thomas v. Overland Express, Inc.*, 101 N.C. App. 90, 96, 398 S.E.2d 921 (1990) (citing *Goldman v. Parkland of Dallas, Inc.*, 277 N.C. 223, 176 S.E.2d 784 (1970) (under North Carolina law, contract "made" where last act necessary to make it binding occurred)).
[2] Even if plaintiff arguably could demonstrate that his fraudulent inducement or unfair and deceptive trade practices claims "arose from" defendant's limited contacts with Massachusetts, he nonetheless cannot demonstrate the applicability of the long-arm statute in this case because ECN does not transact business in Massachusetts.

The constitutional due process analysis involves the three components of relatedness, purposeful

avail ment, and reasonableness:

> First, the claim underlying the litigation must directly arise out of, or relate to, the
> defendant's forum-state activities. Second, the defendant's in-state contacts must
> represent a purposeful availment of the privilege of conducting activities in the
> forum state, thereby invoking the benefits and protections of that state's laws and
> making the defendant's involuntary presence before the state's courts foreseeable.
> Third, the exercise of jurisdiction must, in light of the Gestalt factors, be
> reasonable.

*Hasbro*, 994 F. Supp. at 44 (quoting *United Elec. Workers v. 163 Pleasant St. Corp.*, 960 F.2d

1080)).

1.    Relatedness

The defendant's in-state conduct must form an "important, or [at least] material, element

of proof" in the plaintiff's case. *United Elec. Workers*, 960 F.2d at 1089 (quoting *Marino v.

Hyatt Corp.*, 793 F.2d 427, 430 (1st Cir. 1986) (brackets in original)). In order for the Court to

exercise personal jurisdiction over an out-of-state defendant in a contract case such as this one,

the defendant's forum-based activities must be "instrumental in the formation of the contract" at

issue. *Id.*

As set forth above, the "relatedness" component of the due process analysis corresponds

to the "arising out of" requirement of the Massachusetts long-arm statute. In this case, for the

reasons discussed above, plaintiff cannot establish the required nexus between ECN's negligible

contacts with Massachusetts and his causes of action. Plaintiff thus fails to satisfy the

relatedness component of the due process analysis.

2.    Purposeful Availment

"In evaluating this element, the court must determine whether the defendant's contacts

with Massachusetts represent a purposeful availment of the privilege of conducting activities in

Massachusetts, thereby invoking the benefits and protections of its laws and making the

defendant's involuntary presence before the Massachusetts courts foreseeable." *Mass. Sch. of Law*, 142 F.3d at 36 (internal quotations and citations omitted).  The cornerstones upon which the concept of purposeful availment rest are voluntariness and foreseeability.  *Clark*, 977 F. Supp. at 544 (citing *Sawtelle v. Farrell*, 70 F.3d 1381, 1387 (1st Cir. 1995)).  The function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's "random, isolated or fortuitous" contacts with the forum state.  *Sawtelle*, 70 F.3d at 1391.  "The focus is on whether a defendant has 'engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just or reasonable.'"  *Id.* (quoting *Rush v. Savchuk*, 444 U.S. 320, 329, 100 S.Ct. 571, 577 (1980)).

ECN cannot reasonably be said to have purposely availed itself of the privilege of conducting business in Massachusetts.  As noted above, ECN transacts no business in the Commonwealth and has no offices, agents, or records in Massachusetts.  ECN's isolated, limited, and fortuitous contacts with Massachusetts occurred only because plaintiff, a resident of Massachusetts, contacted ECN in North Carolina to indicate his interest in a position with the corporation.  Plaintiff traveled to ECN's offices in Greenville, North Carolina, at least twice in connection with his interest in a position with ECN and on at least one other occasion in connection with his pending application to practice medicine in North Carolina.  ECN engaged in limited telephone and email correspondence with plaintiff while he was in Massachusetts for the purposes of contract negotiations, but no representative of ECN ever traveled to Massachusetts in connection with those negotiations.  At all times, the expectation of the parties was that all work performed under the contract would be performed in North Carolina, and indeed, all such work was performed there.  By its express terms, the parties' contract was to be subject to and governed by the laws of North Carolina.  It cannot be said, under the

circumstances of this case, that ECN purposefully availed itself of the privilege of conducting activities in Massachusetts.[3] Nor can plaintiff credibly argue that it was reasonably foreseeable that, as a result of its limited contacts with Massachusetts, ECN would be haled into court here. The fact that in July and November, 2002, ECN advertised outside North Carolina the availability of positions at its offices does not require a different result. ECN did not target its physician recruitment efforts toward Massachusetts, but rather placed advertisements in three national professional publications with distribution in the Commonwealth. For all of the reasons stated, plaintiff cannot satisfy the "purposeful availment" component of the due process analysis.

3.    Reasonableness – The Gestalt Factors

The five considerations used in determining reasonableness, dubbed by the First Circuit "the Gestalt factors," come into play only if the first two segments of the test for specific jurisdiction have been fulfilled. *See United Elec. Workers*, 960 F.2d at 1088; *see also Sawtelle*, 70 F.3d at 1394. The five "Gestalt" factors courts examine in assessing the reasonableness component are: (1) the defendant's burden in appearing in the court; (2) the forum state's interest in hearing the suit; (3) the plaintiff's convenience and interest in effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all interested states in promoting substantive social policies. *Hasbro*, 994 F.Supp. at 45 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Because plaintiff fails completely the tests of relatedness and purposeful availment, the Court need not even consider the "Gestalt factors" of reasonableness. If it does so, however, the Court should invoke a sliding scale with respect to reasonableness: "[T]he weaker the plaintiff's

---

[3] Based on the circumstances of this case, it more appropriately could be said, as the court concluded in *Telco Communs. v. New Jersey State Firemen's Mut. Benevolent Ass'n*, 41 Mass. App. 225, 669 N.E. 2d 781 (1996), that plaintiff, by entering into a contract for employment with ECN in North Carolina, invoked the benefits and protections of North Carolina in his dealings with ECN.

showings on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Sawtelle,* 70 F.3d at 1394 (quoting *Ticketmaster-New York v. Alioto,* 26 F.3d 201, 210 (1st Cir. 1994)).

The exercise of jurisdiction over ECN in this case would not be reasonable. ECN's burden in appearing in Massachusetts would be significant. Defendant has no agents in Massachusetts and conducts no business in Massachusetts. All of ECN's employees and other individuals with information concerning plaintiff's employment and the circumstances of his termination are located in North Carolina. As between the two jurisdictions, North Carolina has a more substantial interest in this litigation than does Massachusetts, which has little, if any, such interest. Although this action involves a Massachusetts resident as plaintiff, the contract between the parties was negotiated and accepted in North Carolina, and it is governed, by its terms, by North Carolina law.[4] The exercise of jurisdiction over ECN in Massachusetts in this case therefore is not reasonable.

For all of the reasons stated, plaintiff's complaint should be dismissed for lack of personal jurisdiction.

## II. ALTERNATIVELY, THE ACTION SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT OF NORTH CAROLINA

If the Court denies ECN's motion to dismiss, ECN seeks transfer of this action to the Eastern District of North Carolina, pursuant to 28 U.S.C. § 1404(a).

---

[4] Under North Carolina law, any agreement to employ an individual contains the implied condition that the agreement may be terminated at any time for cause. *See Wilson v. McClenny,* 262 N.C. 121, 131, 136 S.E.2d 569, 577 (1964). Resolution of this case likely will involve the application of this principle, and North Carolina has an interest in the manner in which the principle is applied and interpreted.

## Factual Background

ECN refers to and incorporates in this alternative motion its statement of the factual background set forth above in ECN's motion to dismiss.

With the exception of plaintiff, all of the individuals known to ECN who likely have discoverable information in this case are located in North Carolina, and the majority of these witnesses work at ECN in Greenville. Cundiff App. ¶ 26. ECN is aware of sixteen such individuals. *Id.* ¶ 25. Of those sixteen, at this early stage of the litigation, ten appear to be core witnesses upon whose testimony ECN may rely at trial. *Id.* All patient records and records concerning plaintiff's employment at ECN are located at ECN's offices in Greenville, North Carolina. *Id.* ¶ 27. At present, ECN is aware of approximately 25-30 patient records that may be relevant to this action. *Id.* ¶ 28. These records include MRI and other films. *Id.* ¶ 27. An MRI study typically includes four to eight separate films housed in a jacket. *Id.* ¶ 28. The patient records alone are, therefore, voluminous. *Id.* The federal courthouse in the Greenville Division of the Eastern District of North Carolina is located less than five miles from ECN's offices. *Id.* ¶ 29.

## Argument

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The inquiry on a motion to transfer is two-fold. The court must first determine whether the action sought to be transferred "might have been brought" in the transferee court. The court must then decide whether a transfer is appropriate, considering the convenience of the parties and witnesses and the interests of justice. *See F.A.I. Electronics Corp. v. Chambers*, 944 F. Supp. 77, 80-81 (D. Mass. 1996).

259600                                    15

"The factors to be considered by a court in ruling on a motion to transfer include (1) the convenience of the parties, (2) the convenience of the witnesses, (3) the relative ease of access to sources of proof, (4) the availability of process to compel attendance of unwilling witnesses, (5) cost of obtaining witnesses, and (6) any practical problems associated with trying the case most expeditiously and inexpensively. *See F.A.I.*, 944 F. Supp. at 80-81 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)) and granting transfer to Texas where, among other things, the bulk of the testimony and evidence would come from employees and records kept in Texas).

In this case, plaintiff's action could have been brought in North Carolina, where ECN, the defendant, is located. *See* 28 U.S.C. § 1391(a)(1) (venue is proper in a diversity case in the judicial district where any defendant resides).

The balance of convenience to the parties favors ECN in this case. As discussed above, but for its minimal dealings with plaintiff, ECN has virtually no contacts with Massachusetts. ECN's clinic, MRI center, physicians, and agents all are located in North Carolina. This is not a case where "the result is merely to shift inconvenience to the plaintiff" and transfer is thus appropriate. *See Norman v. Brown, Todd & Heyburn*, 693 F. Supp. 1259, 1261 (D. Mass. 1988); *see also Veryfine Prods., Inc. v. Phlo Corp.*, 124 F. Supp. 2d 16, 26 (D. Mass. 2000) (weighing "hardships" of litigation and noting that because party was "not a stranger to paying the cost of transportation" to send its agents to Massachusetts to contract with Massachusetts corporation, it could not claim that "such transportation is an unreasonable burden simply because the matter at issue is litigation" surrounding one of these contracts). In this case, despite being a Massachusetts resident, plaintiff chose to enter into an employment contract with ECN, a North Caroline corporation, for services to be rendered in North Carolina. Plaintiff cannot claim that arranging to be present in North Carolina was convenient for purposes of providing services to

ECN, but would not be convenient for purposes of pursuing litigation against ECN arising out of the parties' contract.

Litigating in North Carolina also would be more convenient for witnesses than would litigating in Massachusetts. With the exception of plaintiff, who, upon information and belief, resides in Massachusetts, all witnesses known to ECN reside in North Carolina. At present, ECN is aware of sixteen individuals who likely have discoverable information regarding this action. At this early stage of litigation, at least ten of those sixteen witnesses appear to be core witnesses upon whose testimony ECN may depend in its defense at trial.

In addition to the witnesses, the sources of documentary proof – including all patient records and records concerning plaintiff's employment at ECN – also are located in North Carolina. Official copies of protocols of the North Carolina Medical Board that appear relevant to the matters at issue in this case are located in North Carolina as well. At present, ECN is aware of approximately 25-30 patient records that may be relevant to this action. The patient records include MRI and other films. An MRI study typically includes four to eight separate films, housed in a jacket. The patient records alone are, therefore, voluminous.

Finally, the interests of justice favor a transfer to North Carolina. ECN is a North Carolina corporation, and plaintiff is a physician licensed to practice in North Carolina. By its terms, the parties' contract is subject to and governed by North Carolina law.

For these reasons, the convenience of the parties and the witnesses and the interests of justice favor a transfer. Therefore, if the Court declines to dismiss this action, it should order the action transferred to the United States District Court for the Eastern District of North Carolina pursuant to 28 U.S.C. § 1404(a).

259600

## CONCLUSION

Plaintiff cannot establish a basis for the exercise of personal jurisdiction by this Court over ECN under the Massachusetts long-arm statute, and the due process requirements of the United States Constitution. ECN does not transact business in Massachusetts within the meaning of the long-arm statute. Further, ECN has not purposefully availed itself of the privilege of conducting activities in Massachusetts, plaintiff's action is not related to ECN's very limited contacts with Massachusetts, and the exercise of jurisdiction over ECN under the circumstances of this case would not be reasonable.

Alternatively, the facts establish that plaintiff's action could have been brought in North Carolina and that the convenience of the parties, the convenience of the witnesses, the relative ease of access to sources of proof, and the expense of obtaining witnesses, all militate in favor of a transfer of the action to North Carolina.

WHEREFORE, ECN respectfully moves the Court to dismiss the complaint for lack of personal jurisdiction or, in the alternative, to transfer this action to the United States District Court for the Eastern District of North Carolina.

<br>

The Defendant
EAST CAROLINA NEUROLOGY, INC.
By Its Attorneys:

Dated:  February 2, 2004

<br>

Of Counsel:
James C. Dever, III
Michael C. Lord
Maupin Taylor, PA
3200 Beechleaf Court
Suite 500
P.O. Box 19764
Raleigh, NC  27619-9764
Tel:    (919) 981-4000
Fax:    (919) 981-4300

Francis D. Dibble, Jr.
  BBO No. 123220
Vanessa L. Smith
  BBO No. 649258
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, MA  01115-5507
Tel:    (413) 781-2820
Fax:    (413) 747-0770

259600

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail on February 2, 2004.

_Vanessa L. Smith_
Vanessa L. Smith