UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

Civil Action No. 3:04-CV-30001 (MAP)

-------------------------------------

MICHAEL J. BARNETT, M.D., Plaintiff,

v.

EAST CAROLINA NEUROLOGY, INC., Defendant.

==========================================

PLAINTIFF'S OPPOSITION AND MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION, OR, IN THE ALTERNATIVE, FOR TRANSFER.

=======================================================

**Opposition.**

The Plaintiff, Michael J. Barnett, M.D. (Barnett),
**opposes** Defendant's Motion to Dismiss for Lack of Personal
Jurisdiction, or, in the Alternative, for Transfer (ECN's
Motion).

As grounds for his opposition, Barnett contends, as more
fully set forth below, that the Defendant, East Carolina
Neurology, Inc. (ECN), transacted business within the
Commonwealth, or, in the alternative, committed a tortuous act
outside the Commonwealth while engaged in a persistent course
of conduct in the Commonwealth.[1]

---

[1] G.L. c. 223A, §3(d), confers personal jurisdiction over one who
"caus[es] tortious injury in this commonwealth by an act or omission
outside this commonwealth if he regularly does or solicits business, or

1

Barnett further contends that transfer is not appropriate because he initiated suit in the Commonwealth, he resided in the Commonwealth at all times pertinent to the Complaint, the parties did not contract for a choice of forum, ECN's economic resources substantially outweigh his, and at least one witness, Dr. Carl Kramer, practices in the Commonwealth at Lemuel Shattuck Hospital, 170 Morton Street, Jamaica Plain, Massachusetts.

### Memorandum in Opposition.

### Statement of Facts.

Barnett is a physician who specializes in Diagnostic Radiology. The American Board of Medical Specialties (ABMS) has certified him in Radiology. The Massachusetts Board of Registration in Medicine has licensed him to practice medicine in the Commonwealth since 1988.[2]

ECN provides consulting services to physicians and patients in eastern North Carolina.[3] Barnett contracted with ECN to provide diagnostic radiology services to ECN two days per week. Barnett contracted with ECN to "read and interpret"

---

engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth;

[2] Data is available on the website of the Massachusetts Board of Registration in Medicine at: http://profiles.massmedboard.org/Profiles/MA-Physician-Profile-FAQ.asp#board_cert.

[3] Affidavit of David E. Cundiff (Cundiff's Affidavit), filed with ECN's Motion, ¶3.

MRIs or MRAs, CTs, X-rays, and Ultrasounds.[4] The contract
provided that

> Contractee [Barnett] hereby specifically
> undertakes to advise and assist on request any
> other physician-Contractor in the diagnosis and
> treatment of any case. Contractee [Barnett] shall
> have the right to make use of such of his own
> property as he may desire and such property shall
> be and remain that of the Contractee [Barnett].[5]

ECN came to Barnett's attention in May, 2002, when ECN's
President, Donald L. Price, M.D. (Price), wrote to him to
inquire about possible employment. ECN and Barnett did not
reach an agreement for his services at that time. Then, in
August or September, 2002, ECN made a number of attempts to
contact Barnett in Massachusetts to recruit him for a position
had become available.[6, 7]

Barnett was not the first physician from Massachusetts
that ECN had recruited. ECN had contracted with Dr. Carl L.
Kramer who practices at Lemuel Shattuck Hospital. Dr. Kramer
has been licensed in Massachusetts since 1983.[8]

ECN and Barnett negotiated the contract. Although the
contract bears a date of September 20, 2002, Barnett did not

---

[4] Contract between Barnett and ECN, attached as Exhibit 3 to Cundiff's
Affidavit (the contract), ¶5 and ¶8.
[5] The contract, ¶5.
[6] Affidavit of Michael J. Barnett, M.D., Barnett Affidavit), attached
hereto, incorporated herein by reference, and marked as Exhibit A, ¶8.
[7] Affidavit of Donald L. Price, M.D. (Price Affidavit), then President of
ECN, ¶6.
[8] Massachusetts Board of Registration of Medicine  physician profiles:
http://profiles.massmedboard.org/Profiles/MA-Physician-Profile-View-
Doctor.asp?Brn=51314

execute it until October, 2002, in Massachusetts.[9] Barnett
mailed the executed contract from his residential address in
Massachusetts to ECN on or about October 22, 2002.[10]

    At all times pertinent to this case, Barnett resided in
and maintained a medical practice in Massachusetts. He
rendered services under the contract to ECN and the physicians
who consulted ECN from Massachusetts. He used his property in
Massachusetts to communicate by telephone and Email with ECN
and physicians who had consulted ECN. He used his property in
Massachusetts to read and interpret the various images ECN
provided him. He used his property in Massachusetts to review
and revise a significant proportion of the reports he rendered
to ECN under the contract.[11]

1.    **ECN's Transaction Of Business Within The
Commonwealth, And Its Persistent Course Of Conduct Within
The Commonwealth To Generate Significant Income Confers
Personal Jurisdiction Over ECN Upon The Court.**

    Barnett contends that ECN's transaction of business with
him in Massachusetts brings it within the purview of the
Massachusetts Long-Arm Statute, G.L. c. 223A, §3(a).[12] The
courts have construed the phrase, "transacting any business"
broadly. *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 767 (1994).

---

[9] Price Affidavit, ¶12
[10] Cundiff Affidavit, Exhibit 2.
[11] Barnett Affidavit, ¶¶17-21.
[12] G.L. c. 223A, §3(a), provides: "A court may exercise personal
jurisdiction over a person, who acts directly or by an agent, as to a

Barnett suggests that ECN's interactions with him over the life of his contract constitutes the transaction of business within the Commonwealth. Barnett's case differs from those upon which ECN relies because ECN and Barnett engaged in a large number of communications specifically designed to further ECN's business. Also, Barnett performed services in Massachusetts in furtherance of the contract; ECN participated in an facilitated Barnett's performance of services in Massachusetts.

This pattern contrasts with those cases involving one isolated transaction from which follows incidental and random contacts with the Commonwealth. See, e.g., *Droukas v. Divers Training Academy, Inc.,* 375 Mass. 149, 154, 376 N.E.2d 548, 551 (1978) and *Aub v. Techinicolor Entm't Svcs.,* 224 F.Supp. 371, 372 (D. Mass. 2002). In this case, the contract between Barnett and ECN specifically permitted Barnett to use his own property to carry out his contractual obligations. At the time Barnett and ECN first contacted each other, negotiated the contract, and executed it, ECN knew that Barnett resided in Massachusetts. As he fulfilled his contractual obligations, Barnett used his property in Massachusetts, and he continued to reside in Massachusetts. Barnett's Emails, telephone calls and travel arrangements informed ECN that he continued to

cause of action in law or equity arising from the person's (a) transacting

reside in Massachusetts and spent all but two days per week in Massachusetts. ECN received the benefit of Barnett's performance in Massachusetts. ECN sent Emails to Barnett in Massachusetts to help him perform under the contract. Hence, ECN transacted business in Massachusetts by purposely availing itself of its contacts with the State. But for ECN's recruiting and contacts with Barnett in Massachusetts, Barnett's claim never would have arisen. Contrast, *Comer v. Comer,* 295 F.Supp.2d 201, 208-209 (D. Mass. 2003). Therefore, the Court has personal jurisdiction over ECN pursuant to G.L. c. 223A, §3(a).

> **2.    Because ECN Caused Tortious Injury to Barnett In This Commonwealth By An Act Or Omission Outside This Commonwealth, And ECN Engaged In A Persistent Course Of Conduct In This Commonwealth From Which The Injury Arose, The Court Has Personal Jurisdiction Over ECN.**

G.L. c. 223A, §3(d) confers personal jurisdiction over any person who "cause[s] tortious injury in this commonwealth by an act or omission outside this commonwealth if … he engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth." The course of conduct between Barnett and ECN until ECN terminated Barnett's contract was persistent. ECN did not object Barnett's review, revision and

---

any business in this commonwealth."

communication of his reports in and from Massachusetts.[13] The only reason that the persistent course of conduct ended was the unlawful termination of the contract. Barnett has alleged causes of action in tort: fraudulent inducement, unfair and deceptive acts and practices, resulting from the unlawful termination of the contract.[14]

Whether G.L. c. 223A, §3(d), confers "general" rather than "specific" personal jurisdiction is uncertain. *Digital Equipment Corp. v. Altavista Technology, Inc.,* 960 F.Supp. 456, 467 n. 23 (D. Mass. 1997). However, in this case, Barnett contends that it confers at least specific personal jurisdiction because of the persistent course of conduct between the parties.

### 3. The Court Should Not Transfer The Action Because Transfer Advances Neither The Convenience Of The Parties Nor The Interests Of Justice.

A federal district court, in which a suit is filed with proper venue, may transfer the suit to any other district or division with proper venue "for the convenience of parties and witnesses, in the interests of justice...."

In this case, the equities favor Barnett. ECN recruits physicians from outside of North Carolina. In particular, ECN has recruited two physicians from Massachusetts. It would be

---

[13] Barnett Affidavit, ¶¶17, 19, and 20.
[14] Complaint, Third Claim for Relief, Fourth Cause of Action, Fifth Cause of Action.

more difficult for Barnett to pursue this case in North
Carolina than it would for ECN to defend it in Massachusetts.
ECN has more resources than Barnett does. Hence, transfer of
this matter to North Carolina would permit ECN to wage a
financial and personal "war of attrition." For example, ECN
has a network through which it can obtain coverage for any of
its physicians who are unable to render services on any given
day. ECN "operates a clinic," and it is "closely affiliated
with East Carolina University School of Medicine."[15] ECN would
have an easier time obtaining coverage for its physicians and
other "core witnesses" than would Barnett.

ECN could produce witnesses in Massachusetts more easily
than Barnett could produce witnesses in North Carolina.

ECN overstates the volume of documents it might have to
produce. According to ECN, twenty-five to thirty patient
records are potentially relevant to this action.[16] Each record
typically includes four to eight separate films.[17] Since ECN
has not seen fit to count the films, we can assume an average
of six films per file. That results in a total of one hundred
eighty films. One hundred eighty sheets of plastic hardly
constitutes "voluminous records." Even if ECN added some
sheets of paper from patient records to the mix, it is not

---

[15] Cundiff Affidavit, ¶3.
[16] Cundiff Affidavit, ¶28.
[17] Cundiff Affdiavit, ¶27.

"voluminous."

Furthermore, ECN has the burden of proving that the transferee forum is clearly more convenient. See, *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219-220 (7th Cir.1986).

The Court should not disturb a plaintiff's forum selection unless it clearly jeopardizes the defense. In this case, it does not.

### Conclusion.

The Court should deny the Defendant's motion.

Dated at Northampton, March 1, 2004.

Respectfully submitted,
The Plaintiff by his attorneys

Harry L. Miles, for
*Green, Miles, Lipton & Fitz-Gibbon*
77 Pleasant Street, P.O. Box 210
Northampton, MA 01061-0210
Voice:    413.586.8218;  Fax: 413.584.6278
BBO#:     345800

Certificate of Service:  I, Harry L. Miles, certify that I have served a copy of this document upon Vanessa L. Smith, Esq., Bulkley, Richardson and Gelinas, LLP, 1500 Main Street, Suite 2700, Springfield, MA 01115-5507 by causing a copy to be placed in the United States Mail, first-class postage prepaid, today, March 1, 2004.

Harry L. Miles

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Western Section
Civil Action No. 3:04-CV-30001 MAP

------------------------------------

MICHAEL J. BARNETT, M.D., Plaintiff,

v.

EAST CAROLINA NEUROLOGY, INC., Defendant.

==========================================

AFFIDAVIT OF PLAINTIFF, MICHAEL J. BARNETT, M.D., IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION, OR, IN THE ALTERNATIVE, FOR TRANSFER.

==================================================================

I, Michael J. Barnett, M.D., the Plaintiff and Affiant,
make oath and depose that the statements contained in this
Affidavit are true, accurate and complete to the best of my
knowledge and ability:

1)   I have resided at 106 Washington Street, Northampton,
     Hampshire County, Massachusetts before, during and after
     my contractual relationship with the Defendant, East
     Carolina Neurology, Inc. (ECN).

2)   The Commonwealth of Massachusetts has licensed me to
     practice medicine.

3)   I have been a Board-certified Radiologist since 1987.

4)   Before I contracted to perform medical services for ECN,
     I was not licensed to practice medicine in North
     Carolina.

5)   ECN recruited me in Massachusetts.

6)   Early in 2002, Dr. Price from ECN made numerous telephone
     calls and sent a number of Email messages to me in
     Massachusetts to recruit me. At that time, ECN and I did
     not enter into any relationship.

7)   In July, 2002, ECN began to place advertisements in
     nationally-distributed medical journals which circulate
     and to which I have access in Massachusetts. Affidavit of
     David E. Cundiff (Cundiff Affidavit) attached to
     Defendant's Motion To Dismiss For Lack Of Personal
     Jurisdiction, Or, In The Alternative, For Transfer (ECN's
     Motion).

8)   In August through September, 2002, Dr. Price and Mr.
     Cundiff, ECN's Administrator (Cundiff Affidavit at ¶1)
     made a number of telephone calls and sent me a number of
     Email messages in Massachusetts to continue to recruit
     me.

9)   During the recruiting process, I Emailed a large sample
     of consecutive MRI reports from Massachusetts to ECN so
     ECN could evaluate my work.

10) As the result of these telephone calls and Email messages
to me in Massachusetts, I executed a contract with ECN on
or about October 22, 2002. The contract itself is dated
September 20, 2002, but I did not execute it and deliver
it to ECN until October 22, 2002. Cundiff Affidavit,
Attachment 2.

11) I executed the contract in Massachusetts. A copy was
returned to me in Massachusetts.

12) I continued to reside in Massachusetts through the
duration of the contract.

13) Typically, I would fly down to North Carolina on
Wednesday, stay overnight, perform my duties under the
contract at the ECN facility on Thursday and Friday, and
then return to Massachusetts on Saturday.

14) My services consisted of reading and interpreting the
results of MRI, CT, X-Ray and ultrasound procedures.

15) Once I completed the reading and interpretation of the
results, I dictated a report which was transcribed by an
ECN employee.

16) Typically, the transcriptions were not completed by the
time I left North Carolina for Massachusetts or I needed
to review and revise them or I needed to research medical
principles to interpret them properly.

17) Typically, an ECN employee Emailed the reports that were not finished or needed further review and revision or needed further interpretation and research to me in Massachusetts.

18) Typically, I spent a few hours on Monday in Massachusetts finishing up the reports.

19) Typically, I made telephone calls and sent Emails from Massachusetts to ECN in North Carolina and ECN made telephone calls and sent Emails from North Carolina to me in Massachusetts so that I could perform my services under the contract.

20) I performed services under the contract in Massachusetts for about twenty percent of my cases, including, but not limited to: reviewing draft reports, research, and signing reports.

21) I also made telephone calls from Massachusetts to referring physicians to discuss my reports about their cases with them.

22) I made telephone calls from Massachusetts to ECN to schedule cases and to plan for my next trip to North Carolina.

23) The services I rendered to ECN in Massachusetts generated significant income to ECN.

24)    I am aware of at least one other doctor who lives and
       practices in Massachusetts now and who was recruited in
       Massachusetts by ECN before I was. That doctor is Carl L.
       Kramer and he practices at Lemuel Shattuck Hospital in
       Massachusetts.

       Signed under the pains and penalties of perjury this _____ .
day of March, 2004.

Respectfully submitted,
The Affiant

Michael J. Barnett, M.D.